# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SCOTT,<br><br>　　　　　　　　　　　　Plaintiff,<br>　v.<br>JANET A NAPOLITANO, DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　　　　　　　　　DefendantS. | Case No. 08cv0735 BTM(JMA)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT** |

On September 18, 2012, the Court held an evidentiary hearing on Defendant's Motion for Judgment Based on ADR Settlement. For the reasons discussed below, the Court holds that Plaintiff can rescind the August 12, 2010 Memorandum of Settlement based on unilateral mistake and **DENIES** Defendant's motion.

## I. BACKGROUND

Plaintiff and Defendant filed competing motions to enforce settlement. In an order filed on July 10, 2012, the Court denied Plaintiff's motion to enforce an alleged settlement reached on July 28, 2011, and granted an evidentiary hearing on Defendant's motion to enforce the August 12, 2010 Memorandum of Settlement ("Memorandum").

The Court granted an evidentiary hearing on the issue of whether Plaintiff could avoid enforcement of the Memorandum based on unilateral or mutual mistake of fact. The Court

found that there was a factual question as to whether there was a mutual or unilateral mistake with respect to (1) whether Plaintiff had the option of obtaining federal health coverage through an OPM waiver; and (2) whether $150,000 was sufficient to provide comparable health coverage to Plaintiff and his family.

On August 31, 2012, Defendant filed an ex parte motion to cancel or limit the scope of the evidentiary hearing. In an order filed on September 14, 2012, the Court granted in part and denied in part the ex parte motion. The Court ruled that Plaintiff was not statutorily eligible for an OPM waiver and limited the evidentiary hearing to the issue of whether there was a unilateral or mutual mistake as to whether $150,000 was sufficient to provide comparable health coverage to Plaintiff and his family.

On September 18, 2012, the Court held the evidentiary hearing. The only witnesses were Plaintiff James Scott and his wife, Lisa Scott.

## II. DISCUSSION

After considering the testimony at the evidentiary hearing and reviewing the post-hearing briefing, the Court concludes that Plaintiff may rescind the Memorandum based on unilateral mistake - i.e., Plaintiff's erroneous belief that the $150,000 designated by the Memorandum to "defer the costs of health insurance for Plaintiff and his family" would be sufficient to cover the premiums of the insurance plan he had in place at that time until he reached the age of 65.

A. Evidentiary Hearing Testimony

Mr. Scott testified that obtaining a health care plan that was comparable to FEHB and that he could afford was a very important issue during the settlement discussions. (Evidentiary Hearing Transcript ("EHT") 27:19-28:1.)

When it became clear that the government could not provide FEHB benefits, the $150,000 figure was proposed as compensation in lieu of the benefits. (EHT 29:7-10.) At the hearing, Mr. Scott testified that he thought that the $150,000 was to provide health care

1  comparable to FEHB for him and his family.  (EHT 29:12-13.)

2  However, Mr. Scott did not know how the $150,000 figure was derived.  He only recalled that his wife had extensive conversations with the mediator and that the mediator had come up with the figure based on the discussions. (EHT 28:7-15, 42:24-25.)  Mr. Scott did not follow the discussions his wife had with the mediator.  (EHT 40:23-24.)  Mr. Scott trusted his wife to handle the family's financial and medical issues.  (EHT 40:15-17.)  Mr. Scott relied on his wife, the "family expert," to handle medical insurance issues and delegated those duties to her.  (EHT 28:20-24.)

Because his wife handles medical insurance, Mr. Scott did not know how much he was paying in premiums for his private plan with Kaiser at the time of the mediation.  (EHT 26:12-14.)  He also did not know how much in premiums he paid while he was on TCC (COBRA).  (Id. at 8-9.)  He did not know what benefits the private plan afforded.  (EHT 33:2-5.)  Mr. Scott's wife filled out health benefit forms, discussed medical issues with the agency, determined premium costs, and wrote checks for the premiums.  (EHT 34:20-35:2; 37:2-6, 22-25, 40:4-9.)

Lisa Scott also testified that the issue of health coverage was very important to her and her husband because all three members of her family had preexisting medical conditions and health care was difficult to obtain. (EHT 45:22-25.)  Ms. Scott did not believe that the $150,000 would provide health care comparable to FEHB because the figure was derived from the premiums she was paying at that time for the private "conversion" Kaiser plan.  (EHT 49:5-6.)  The private plan was not as good as the FEHB plan due to higher premiums, higher co-pays, deductibles, and non-covered costs, but it was the "best policy" the Scotts could obtain due to their preexisting conditions.  (EHT 50:21-52:10.)

Ms. Scott recalls that the mediator reached the $150,000 figure by multiplying the Scotts' monthly premium payment of $1248 by 12 to reach an annual amount and then multiplying the annual amount by 9 (the number of years until Mr. Scott reached "Medicare age").  (EHT 49:8-14.)  When it was pointed out to Ms. Scott that the actual product of those numbers is $134,784, Ms. Scott testified that she did not know why the proposed number

was $150,000. (EHT 50:9-12.)

Ms. Scott explained that after the mediator did the math for her, he said that the $150,000 would cover the family's premiums. (EHT 50:15-16, 69:13-16.) Accordingly, Ms. Scott believed that the $150,000 would pay the entire amount of the premiums for their current health insurance plan until Mr. Scott reached the age of 65. (EHT 68:15-17, 69:10-11.)

Ms. Scott was an instrumental part of Mr. Scott entering in the settlement agreement. (EHT 56:24-57:1.) Although she doesn't recall specific discussions with Mr. Scott regarding the $150,000 covering the premiums, she discussed the settlement with Mr. Scott and they came to an understanding between themselves that the $150,000 would pay for their health benefits. (EHT 57:24-58:3.)

Later, Ms. Scott discovered that the $150,000 would not cover the premiums for a period of nine years. She discovered that the premiums increase annually at a higher rate than expected and that the $150,000 would be subject to taxes and attorney's fees. (EHT 51:4-13.) She learned that 40 percent of the $150,000 would have to be paid as taxes. (EHT 56:14-19.) Ms. Scott testified that she was not advised that she and her husband would have to pay taxes on the money that they were going to use for health coverage. (EHT 55:22-56:3.) According to Ms. Scott, her attorney did not mention taxes, and there were no discussions about the tax consequences of the $150,000 payment. (EHT 67:25-68:3.) She explained, "By that late in the day, I wasn't thinking about taxes. The idea of the - I have been in a car accident before and when you receive a settlement you don't have to pay taxes. . . . So I don't know that I was aware." (EHT 67:20-24.)

B. Unilateral Mistake

Based on the testimony of Mr. and Ms. Scott, the Court finds that the parties' settlement agreement was the result of a unilateral mistake of fact. The Scotts were led to believe that the $150,000 would be sufficient to cover the premiums of their current health

insurance for nine years, when, in fact, it would not be enough after deducting taxes.[1]

As discussed in the Court's July 10, 2012 Order, under California law, a party may rescind a contract if his or her consent was given by mistake. Cal. Civ. Code § 1689(b)(1). A mistake of fact is "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in . . . an unconscious ignorance or forgetfulness of a fact past or present, material to the contract." Cal. Civ. Code § 1577.  Where a party wants to rescind a contract based on a unilateral mistake of fact and the other party has no reason to know of and did not cause the mistake of fact, the party seeking rescission must establish that: (1) he made a mistake regarding a basic assumption upon which he made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to him; (3) he does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable. Donovan v. RRL Corp., 26 Cal. 4th 261, 282 (2001).

The evidence shows that Mr. Scott made a mistake regarding a basic assumption upon which he made the contract. Mr. Scott and Ms. Scott understood that the $150,000 would be sufficient to cover their health care needs. Although Mr. Scott only had a vague understanding of what the $150,000 would cover, it is apparent that he was relying on the assessment of his wife, who believed that the $150,000 would be sufficient to cover the family's health insurance premiums for their non-FEHB plan for the nine years until Mr. Scott's retirement.

The government claims that the mediator just presented the math and Ms. Scott *inferred* that the $150,000 would cover the premium payments. To the contrary, Ms. Scott testified, "When he [the mediator] said how much do you – how much is your premium, and

---

[1] The Court is not persuaded by Plaintiff's arguments regarding the annual increase in premiums or attorney's fees. A mistake regarding the rate at which premiums would increase annually would be a mistake of judgment. Generally, rescission is not allowed for errors in judgment. M.F. Kemper Const. Co. v. City of Los Angeles, 37 Cal. 2d 696, 703 (1951).  As for a mistake regarding whether attorney's fees would be taken out of the $150,000, Plaintiff should have known what fee arrangements had been made between himself and his attorney. The Court notes that there was no evidence presented regarding the fee agreement between Plaintiff and his attorney.

he multiplied it by nine years, he said that will cover your premiums." (EHT 69:13-15.) Ms. Scott further testified that nobody mentioned that the $150,000 would be taxed, and she had no awareness that taxes might become an issue. Given the quick pace at which information is exchanged during mediations, accompanied by pressure to "seal the deal" on the spot, Ms. Scott's testimony is wholly believable.

Defendant has submitted a Declaration of Matthew G. English, the Scotts' attorney at the time of the mediation. In the Declaration, Mr. English explains that it is his practice to advise his clients that settlements may have tax consequences and to include in his attorney-client agreements a clause expressly advising the client that settlements may have tax consequences. (English Decl. ¶ 2.) Mr. English states that he does not feel free to reveal any communications between himself and Mr. Scott without a waiver. (English Decl. ¶ 3.) The Court does not give any weight to Mr. English's Declaration. Mr. English did not testify at the evidentiary hearing, even though he was subpoenaed by Defendant, and was not subject to cross-examination. Furthermore, Mr. English claims to have a lien in the amount of $361,367.30 on any settlement amounts and will benefit from the enforcement of the Memorandum. At any rate, the fact that Mr. English may have told Mr. Scott at some point in time that settlements generally may have tax consequences does not make it unreasonable for the Scotts to accept the mediator's specific factual assertion that $150,000 would cover their health insurance premiums for nine years.[2] The Court denies Defendant's request ro reopen because Defendant already had the opportunity to put Mr. English on the stand.

Defendant argues that Plaintiff's mistake was one of law, not fact. Under California law, a mistake of law is a basis for rescission only where all parties misapprehend the law

---

[2] Defendant also argues that there was no mistake because knowledge of Plaintiff's attorney is imputed to Plaintiff. "Information imparted to a lawyer during and relating to the representation of a client is attributed to the client for the purpose of determining the client's rights and liabilities in matters in which the lawyer represents the client, unless those rights or liabilities require proof of the client's personal knowledge or intentions or the lawyer's legal duties preclude disclosure of the information to the client." Rest. (Third) of Law Governing Lawyers § 28 (2000). No evidence has been presented that Mr. English had knowledge that the $150,000 would not be sufficient to cover the premiums for nine years.

or one party misapprehends the law and the others are aware of the misapprehension but do not rectify it.  Cal. Civ. Code § 1578; Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App.4th 1410, 1421 (1996).  A mistake of law is when a person knows the facts as they really are, but has a mistaken belief as to the legal consequences of those facts. Hedging Concepts, 41 Cal. App. 4th at 1421 n. 9.  If Plaintiff was merely presented the $150,000 figure and Plaintiff erroneously believed that the amount would not be taxed, the Court would tend to agree that Plaintiff made a mistake of law.  However, here, Plaintiff was told that $150,000 would be sufficient to cover the premiums for nine years.  The mediator's assertion was a *factual* one.  Therefore, the Court concludes that the mistake was primarily one of fact and that mutual mistake is not required.[3]

The Court also finds that the mistake has a material effect upon the agreed exchange of performances that is adverse to Plaintiff.  In the post-hearing briefing, Defendant does not dispute that the $150,000 would be taxable.  Although it is unclear at what exact rate the $150,000 would be taxed, the amount of the tax would almost certainly be significant. Therefore, the Court can confidently say that the $150,000 minus taxes would fall far short of covering the health insurance premiums for nine years.

Defendant does not argue that Plaintiff bore the risk of the mistake, but disputes that the enforcement of the agreement would be unconscionable.  Defendant points out that the $150,000 was just a portion of the $655,000 and argues that Plaintiff has not shown that he could not afford insurance with the remainder of the insurance proceeds.  The Court is not persuaded by this argument.  The Scotts were particularly concerned about health benefits, and the provision of FEHB, or payments in lieu thereof, was a separate point of negotiation. The remainder of the $655,000 was meant to cover other damages.  In light of the significance of health benefits to the Scotts, the fact that the $150,000 actually would not come close to covering their premiums for nine years renders enforcement of the Memorandum unconscionable.

---

[3] For the same reasons, the Court rejects the government's argument that the mistake was one of judgment.

In sum, the Court finds that Plaintiff has satisfied the requirements for rescission based on unilateral mistake. Therefore, the Court denies Defendant's motion to enforce the Memorandum.

### III. CONCLUSION

For the reasons discussed above, Defendant's Motion for Judgment Based on ADR Settlement [Doc. No. 83] is **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 27, 2012

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court