**WILLIAM K. BREWER** (SBN 127330)
**RONALD LENERT** (SBN 277434)
Office of William Brewer, Attorney at Law
8880 Rio San Diego Drive, Suite 1098
San Diego, CA 92108
Telephone: (619) 291-6558
Facsimile: (619) 291-6433

Attorneys for Plaintiff
JAMES SCOTT

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES SCOTT,<br><br>Plaintiff,<br><br>v.<br><br>JANET A. NAPOLITANO, SECRETARY, DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Civil No. 08cv0735 BTM (JMA)<br><br>**PLAINTIFF JAMES SCOTT'S OBJECTIONS TO DEFENDANT'S MOTION IN LIMINE ONE OF FIVE**<br><br>TRIAL: July 22, 2013, 9:30 a.m.<br>CTRM: 15B<br><br>JUDGE: Hon. Barry T. Moskowitz |

SUMMARY OF GROUNDS FOR OPPOSITION

Defendant has brought a motion to exclude evidence, reference to, and argument regarding (1) the legality of Defendant's medical examination program, (2) the different types of exams available under the program, and (3) the types of exam to which Plaintiff was ordered to submit. Defendant incorrectly asserts that these matters have been resolved by the Court on summary judgment.

This Court ruled that Defendant could order appropriate medical exams of its employees, and the characterization or name of the exam made no difference. Plaintiff intends to abide by the Court's ruling. However, Defendant's motion asserts greater limitations than are made in the Court's decision. Defendant incorrectly states that the Court has declared the Defendant's entire medical program legal, and has declared all of Defendant's actions regarding anything referred to as 'medical' to be beyond discussion. This is significantly beyond the scope of the ruling, it is territory relevant to the trial issues, and imposing such limitations would be improper and unfair to the Plaintiff.

ARGUMENT

**I. The Court's ruling was specific in holding that Defendant could properly demand an exam, and that the name given to the exam did not matter. The ruling did not encompass Defendant's *entire medical program*, and found a flaw in the *way* the exam was conducted.**

The Court ruled that Defendant could properly administer an exam as a matter of business necessity. (Doc. No. 46, p. 13) ("There is no question that ensuring that an armed officer can perform his job properly and safely is a business necessity.") The Court ruled that the type of exam administered was difficult to ascertain, but the name of the exam did not matter. (Doc. No. 46, p. 12) ("the Court cannot say that the exam was a "periodic exam" and not a "fitness-for-duty" exam. At any rate, in this case, the characterization of the exam as a "periodic exam" or "fitness-for-duty" exam makes no difference to the outcome of the case. Both … exams are permissible as long as they are "job related and consistent with business necessity.")

From this point, the Court then determined that the exam was administered to Plaintiff in a way that did not follow the law. (Doc. No. 46, p. 14) (despite its characterization "the exam went beyond its proper scope"). The Court ruled that in Defendant's exam the Defendant made demands for information which were impermissibly overbroad in scope and in time. (Doc. No. 46, p. 16)("The

Court's holding is limited to the questions on the medical exam form and the questions posed by Ms. Hirano, which were overbroad in scope and in time. These disability-related inquiries were not narrowly tailored…"). In summation, the Court's ruling explains that it was permissible for Defendant to administer this exam, but that a part of the exam was administered illegally. Also notable, the Court's ruling evaluates the propriety of exams that can be administered, and does not comment, and certainly does not sanction, the full and unexplained medical program in toto.

**II. The Court did not place the Defendant's entire medical program beyond reproach, nor should it make such a holding now.**

An agency's medical program is much more complex than the administration of a single exam. In this case, numerous areas of Defendant's medical program may warrant discussion at trial. Among potential questions that may be relevant at trial:

- Was the medical program maintained in accordance with controlling statutes, citied by Defendant as 5 CFR 339?
- Were the medical program decision-makers properly designated?
- Was the medical program evenly and uniformly applied to employees?
- Did the medical program have an established policy on how to schedule exams, and how to follow up if they were incomplete?
- Did the medical program create its own forms, use those designated by a statue, or take them from another source?
- What reviews did the medical program conduct when concerns or complaints were raised?
- Did the medical program have oversight?

In this case, Plaintiff identified an issue with Defendant's medical exam; it demanded he answer questions protected under the ADA. Plaintiff informed Defendant that this was an ADA violation numerous times, and asserted his right not to answer them. Defendant gave Plaintiff orders to comply with its medical program. Defendant then used Plaintiff's assertion of his rights as a ground to suspend and then terminate him. It is now known that the individual that ordered Plaintiff to take the exam, Mr. Clabby, was not an appropriate supervisor to order this exam and concealed his involvement. It is known that the CFR did not require adverse action against Plaintiff. It is known that Defendant did not use the form posing the inappropriate questions, but had made a choice to adopt it. It is known that Defendant did not review Plaintiff's meritorious complaint, and began the adverse

actions blind to the regulations. All of these known facts are relevant in allowing Plaintiff to discuss why his suspension and termination were an act of retaliation by the Defendant when Plaintiff objected to their medical program and took a stand, asserting that the Defendant was acting illegally. Defendant's response was to punish Plaintiff for his assertions and silence him from criticizing or exposing the issues in their medical program.

**III. While ordering medical exams is appropriate for business necessity (proper performance and safety), Defendant was using its medical program to order exams to justify force reductions or target certain individuals.**

The Court's order explains that medical exams are justified for proper business necessity. However, evidence in this case will show that Defendant was only ostensibly making such a claim. In fact, medical exams were being enforced on individuals who had had medical issues, filed EEO complaints, or had disagreed with Defendant's other policies. John Hartman, who will be called to testify at trial, has explained:

- "[Regional Director Steven Dade] would mention on many occasions that, 'There are those in the agency who do not contribute to the success of the Federal Protective Service,' and he would like to cut the dead wood across the board. [Specifically] ..[t]hose people that filed EEOs and individuals who were on sick leave or had been out on medical issues."
(Hartman deposition, pp.26:7-14)

- "[Dade] also maintained a board in his office… [with] various names of people that were in a subjective status where it was -- where it was a medical issue or those employees were involved in some kind of adverse action, or employees who were close to retirement. And I thought it was inappropriate [to have them on a board designed to track anticipated manpower cuts].
(Hartman deposition, p.31:16-24)

- "I was familiar with the rights that employees are afforded to based on medical issues or EEO issues. And any time that I attempted to relay those to Mr. Dade, it just appeared to fall on deaf ears. In fact, he would go so far as to say that he couldn't trust me because that I was too close to the agents and that I could not adequately perform the issues related to [termination or medical processing]"
(Hartman deposition, pp.40:17-41:5)

The use of medical exams as an excuse to terminate employees is beyond the proper justification of business necessity.

In this case, Plaintiff had previously filed EEO complaints against the Defendant. Mr. Dade was aware of these complaints, at least as early as October 2, 2006. After discussing with Mr. Clabby,

Mr. Dade was responsible for transferring termination authority over Plaintiff to a different region just one month later, on November 8, 2006. Mr. Dade was involved in the processing of Plaintiff's termination in March 2007. Mr. Clabby was aware of several complaints filed by Plaintiff, and ordered Plaintiff to submit to the medical exam at issue. Mr. Clabby hid his involvement in making this order, which was only revealed to Plaintiff in discovery. Mr. Clabby justified his order by referencing Plaintiff having an ongoing mental health issue, which was totally unfounded. Mr. Clabby informs Mr. Dade that Plaintiff is in the process of medical removal in October 2006, a full three months before removal is even proposed by Ms. Hirano.

### IV. Concealing a settled legal question, and precluding all reference to it, will create confusion and prejudice.

Hiding this information from the jury will effectively reverse the Court's ruling, as the jury will rationally conclude that the questions were proper. The rational reasoning would be as such; Plaintiff has not argued the questions are improper, there has been no mention that they are anything but proper; if there was an argument to be made then it is the Plaintiff's obligation to make it, therefore no issue exists and the questions were properly demanded of the Plaintiff.

Further, Plaintiff only has a chance of meeting his burden if the jury knows Plaintiff was correct to assert his ADA rights, and that Defendant is wrong if it terminated him in response. If a jury concludes Plaintiff refused to complete a medical exam without justification, the will not be willing to deliver a verdict for Plaintiff.

Although Defendant administered an exam which made illegal demands of its employees, it is attempting to excise its wrongdoing from this trial, while at the same time making Plaintiff look like he had no justification to raise an objection to such demands. Such a strategy is prejudicial and unfair, and must not be allowed.

//

//

//

//

CONCLUSION

For the stated reasons, Plaintiff opposes Defendant's motion and requests it be denied by the Court.

Date: July 12, 2013

Respectfully submitted,

/s/ William K. Brewer

William K. Brewer
Attorney for Defendant
James Scott