**WILLIAM K. BREWER** (SBN 127330)
**RONALD LENERT** (SBN 277434)
Office of William Brewer, Attorney at Law
8880 Rio San Diego Drive, Suite 1098
San Diego, CA 92108
Telephone: (619) 291-6558
Facsimile: (619) 291-6433

Attorneys for Plaintiff
JAMES SCOTT

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES SCOTT,<br><br>Plaintiff,<br><br>v.<br><br>JANET A. NAPOLITANO, SECRETARY, DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Civil No. 08cv0735 BTM (JMA)<br><br>**PLAINTIFF JAMES SCOTT'S OBJECTIONS TO DEFENDANT'S MOTION IN LIMINE TWO OF FIVE**<br><br>TRIAL: July 22, 2013, 9:30 a.m.<br>CTRM: 15B<br><br>JUDGE: Hon. Barry T. Moskowitz |

SUMMARY OF GROUNDS FOR OPPOSITION

Defendant has brought a motion to exclude evidence, reference to, and argument regarding whether Defendant's medical questions and releases violated the Rehabilitation Act and the Americans with Disabilities Act ("ADA"). This conclusion has already been made by the Court, which held that the medical questions *did* violate the law. Defendant argues this same position again in their fifth Motion in Limine; motion to exclude reference to the Court's summary judgment order.

Such a prohibition would effectively reverse the Courts ruling, as omitting mention of the illegal practice would allow the jury to believe that it was legal. Precluding discussion of Plaintiff's legal justification to abstain from answering the questions creates an impossible burden of proof for the Plaintiff to receive a verdict under. Further, the exclusion would create confusion as to the context and facts driving the key decisions made in this case, and could lead the jury to improperly view Plaintiff

as unreasonable while also improperly viewing Defendant as inscrutable. Finally, the legality of the releases is a separate issue from the legality of the medical questions, and components of the releases must be discussed to ensure a fair trial.

## ARGUMENT

### I. Preventing mention of the medical questions' controversy imposes an impossible burden on Plaintiff.

Plaintiff identified that Defendant demanded that he answer questions in violation of his rights. When he asserted his rights and refused to answer them, Defendant suspended and then terminated him. Defendant now argues, without compelling justification, to exclude all of this foundation from the jury trial. Defendant's motion is to preclude all discussion of Plaintiff's research, rational review, attempts to educate Defendant itself, and the very reason that Plaintiff asserted his rights, to the jeopardy of his career and livelihood. Plaintiff felt he shouldn't have to provide those answers, and he did not, and upon review Plaintiff was on strong footing to assert his rights. A ruling that the ADA cannot be mentioned eviscerates the defining issue in this case.

The Defense's suggested ruling would also make it virtually if not impossible for the Plaintiff to meet its burden. In rough language, Plaintiff must show that he asserted his legal rights under the ADA, and that his assertion was the reason Defendant suspended and terminated him. If the jury can be allowed to assume that Plaintiff had no right to refuse to answer the questions, and Defendant fired him because of his improper refusals, they would have to conclude that the termination was appropriate. It is only possible for Plaintiff to meet his burden if the jury knows Plaintiff was correct to assert his ADA rights, and that Defendant is wrong if it terminated him in response.

### II. Excluding the dispute as to the legality of the medical questions will allow the jury to conclude that there is no dispute, that the questions must have been legal, and effectively overrules the Court's conclusion.

Hiding the ADA discussion and holding the legal conclusion from the jury will effectively reverse the Courts ruling. The jury will rationally conclude that the questions were proper because the Plaintiff has not argued that they are improper, there has been no mention that they are anything but proper. The Defendant will introduce deposition testimony justifying the questions and their

application to the Douglas Factors for termination. The jury will be mislead into believing Mr. Scott had no right to refuse to answer the medical questions.

**III. Defendant misstates the Courts ruling when it concludes that all issues surrounding the releases have been fully adjudicated.**

In a footnote, the Court held that it did not find that the two releases at issue were overbroad or violated Plaintiff's privacy rights. (Doc. No. 46, p.23). Defendant seems to argue in its motion that no legal questions can now be raised regarding the releases.

The release language alone, first presented on the medical form and second presented by Ms. Hirano, are legal in their own right. However, in abstaining to sign the release language of the medical form, Plaintiff provided his own release language. There has been no ruling why Plaintiff's language wasn't also a legal release. The issues at trial, regarding the first release, will not be about the wording of the release itself; it will be whether Plaintiff had an obligation to sign the form's release printed, and whether Plaintiff's release was a sufficient alternative. The issue at trial, regarding the second release, again will not be about the wording of the release itself; it will be about the 45 pages of documents that Ms. Hirano believes qualify as releasable medical information. (Plaintiff Exhibit 19).

Because Defendant is expected to argue that Plaintiff's failure to sign each of the two releases was independent grounds for the adverse actions, it is essential that Plaintiff be able to discuss the adequacy of signing his own release and discuss his reasons for objecting to Ms. Hirano's documents as falling outside of the release's authorization.

**IV. Prohibiting discussion of the controversy surrounding Defendant's medical questions and its violation of the ADA creates a void in the facts of this trial.**

a. <u>The jury will fill in the factual void with the conclusion that Plaintiff's actions were unreasonable.</u>

Plaintiff identified a legal violation with the questions presented in his medical exam. He conducted research and formed the belief that he would be correct in asserting his legal right to abstain from answering them. Plaintiff did not simply leave the questions blank, he wrote in that he believed them to violate the ADA. Plaintiff answered all other questions on the medical form. Upon inquiry as to why he did not answer the questions, Plaintiff freely and continually attempted to educate Defendant on why the questions were improper. Plaintiff asserts that he abstained to conceal information, and has

now committed himself to discussing his own mental health history. Plaintiff abstained because he believed he had a legally protected right to not disclose personal information if he chose not to. Plaintiff's research, attempts to educate Defendant, and conviction in his belief in the ADA's protections are required to explain why those questions weren't answered on the medical form. Granting Defendant's motion to exempt reference to the ADA would make Plaintiff's abstention unjustified, and perhaps unjustifiable.

b. <u>The jury will fill the factual void with an assumption that Defendant is inscrutable.</u>

Without discussion of the law that would permit or disallow Defendant from asking the medical questions at issue, the jury will assume that a federal agency would be asking proper questions, and that the Defendant's medical questions were legal. As such, they would have no reason to be skeptical or critical about Defendant's decisions or processes. It would certainly be inappropriate for the jury to reach this conclusion in darkness to the fact that Defendant was actually violating the law, was unwilling to evaluate its own practices when put on notice, and actually terminated Plaintiff for relying on a federal law that gave him protection.

**V. Defendant's attempt to exclude mention that the questions could (and did) violate the law, taken with Defendant's deposition designations, will give undue justification to its decision to terminate Plaintiff.**

Defendant has already moved to introduce Mr. Slagowski's discussion and documentation of his review of 'Douglas Factors' which supported his decision to terminate Plaintiff. This discussion and documentation would tend to show that Defendant's termination was reasoned and unbiased. (Slagowski deposition, p.117:11 – 117:24). Defendant has submitted approximately 350 lines of Mr. Slagoski's deposition testimony discussing his reasoned application of the Douglas Factors. Defendant intents to explain that management couldn't trust Plaintiff (due to his assertion of his ADA rights), and that Plaintiff's assertion of his ADA rights were "without merit." (Id. at 130:7-12). However, the Douglas Factors are by their own guidelines only appropriately applied through a two step process; "…the appropriate review by the Deciding Official is a two-step process. Each step is wholly independent of the other. Step 1 – First, there must be an appropriate review of the evidence to determine if it is sufficient to sustain the charges. Step 2 – Second, there must be an appropriate

review and consideration of any possible factors that might mitigate or aggravate the proposed action." (Defense Exhibit AQ).

Because Mr. Slagowski admits he took no steps to evaluate Plaintiff's ADA assertions, step one was not done. Further, Defendant's motion to preclude ADA discussion would rend this critical step from the process. It is clear that the Douglas Factor review was not appropriately applied, and the process to ensure 'unbiased decision-making' was fatally flawed. Discussion of the Douglas Factors has little to no value in justifying Defendant's termination decision. Plaintiff believes Slagowski terminated him in retaliation for his assertion of his ADA rights. The evidence will show Slagowski did not have any other valid reason, nor did he bother to confirm the validity of the reason he cited. He did not bother to take any meaningful review, he took no steps to make an unbiased decision. Yet, none of this can be shown to the jury without discussing the ADA, or specifically the Defendant's lack of review of the ADA. Limiting Plaintiff's ability to discuss the ADA precludes him from questioning

Slagowski's credibility as an unbiased decision-maker, and allows Defendant to present a 'Douglas Factor' review as a hallmark of independent review when its application in this case actually shows that it was anything but.

CONCLUSION

For the stated reasons, Plaintiff opposes Defendant's motion and requests it be denied by the Court.

Date: July 12, 2013

Respectfully submitted,

/s/ William K. Brewer

William K. Brewer
Attorney for Defendant
James Scott