# Plaintiff Exhibit "19"

# EXHIBIT AQ

**DOUGLAS FACTORS REVIEW FORM**

In Douglas, the Board made a distinction between (1) determinations about whether any action should be taken and (2) determinations about what is an appropriate penalty. Thus, the appropriate review by the Deciding Official is a two-step process. Each step is wholly independent of the other.

Step 1 - First, there must be an appropriate review of the evidence to determine if it is sufficient to sustain the charges.

Step 2- Second, there must be an appropriate review and consideration of any possible factors that might mitigate or aggravate the proposed action.

To support taking any action there must be an adequate relationship, or "Nexus" between the misconduct and the efficiency of the Service. To determine what penalty would be appropriate the agency must consider all relevant factors (a.k.a., Douglas Factors) both mitigating and aggravating.

INSTRUCTIONS: Use this form to assist and document your review of the relevant Douglas Factors. Use the code system below to indicate whether a given factor is mitigating, aggravating or neutral in your consideration. Under "FINDING" record your conclusions and discussion about how the factor does or does not apply to the case under consideration. Under "FINAL CONCLUSION" record the summary of your overall conclusions with respect to the Douglas Factor considerations.

**CODE SYSTEM:** A = aggravating
M = mitigating
N = neutral

Employee Name:
Case Number:
CHARGE:

---

_A____ (1) The nature and seriousness of the offense, and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated.

FINDING: This employee is a GS-1811-12 Special Agent working in a remote city with his supervisor located many hundreds of miles away. His position is one of great public trust and requires Agent Scott to be trustworthy to follow all supervisory directives unless they would result place him in a dangerous situation or cause irreparable harm to him. Agent Scott could not reasonably believe this would occur by following a directive to release medical information to the Agency's Medical Review Officer that he had already previously released to the Agency. Likewise, Agent Scott could not reasonably believe

such a result would occur by answering questions on a medical questionnaire (as part of a periodic medical examination that Agent Scott was required to undergo) that the Agency's Medical Review Officer (MRO) had determined are necessary in order to make a fitness for duty determination. This is especially true since it is a condition of Agent Scott's employment to successfully complete all medical testing requirements which includes the periodic medical examination program. Agent Scott had ample opportunity to follow the directives given to him after asking for and receiving clarification about the Agency's need for this information and its legal authority for requiring him to comply with the directives. Despite being provided with the legal authority for the directives he still refused to comply with both directives. Agent Scott's refusal to comply with these directives has had serious adverse consequences for the Agency since his refusal has resulted in his not being medically cleared to perform his law enforcement duties.

__A__ (2) The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position.

FINDING: Agent Scott is a journeyman level criminal investigator who was assigned to the Joint Terrorism Task Force. He was needed to perform this work to make Federal facilities safer in the Southern California border area. As a GS-12 Criminal Investigator he is required to perform his duties independently which includes planning and conducting the most complex investigations occurring within his area of assignment. As a law enforcement officer with arrest authority he must be trusted to exercise good judgment in carrying out his duties.

__N__ (3) The employee's past disciplinary record.

FINDING: I have no knowledge of this.

__M__ (4) The employee's past work record, including length of service, performance on the job, ability to get along well with fellow workers, and dependability.

FINDING: Agent Scott's performance evaluations for 2005 and 2006 have been satisfactory. I note, however, that he was only performing unclassified duties for the entire 2005-2006 rating period. Agent Scott has been employed by FPS since July of 2001.

___A__ (5) The effect of the offense on the employee's ability to perform at a satisfactory level and its effect on the supervisor's confidence in the employee's ability to perform assigned duties.

FINDING: Due to his refusal to comply with two direct orders from a manager with supervisory authority over him he can no longer perform his job duties as a criminal investigator. The agency cannot determine if he is medically fit to perform his job duties and so cannot allow him to work as a criminal investigator. Additionally, the trust required between employee and supervisor is destroyed.

___N__ (6) Consistency of the penalty with those imposed on other employees for the same or similar offenses.

FINDING: There are no other same or similar offenses committed by a GS-12 Special Agent that I am aware of.

___A__ (7) Consistency of the penalty with any agency table of penalties, if applicable.

FINDING: The agency table of penalties states failure to promptly and fully comply with directions of a supervisor or other management official is punishable with a written reprimand to 14 day suspension. The Table of Penalties, however is to be used as a general guideline and it specifically states that management has the authority to exceed the penalties listed in the guide if circumstances warrant. Removal of Agent Scott from the Federal Protective Service is warranted by the circumstances in this case because Agent Scott cannot perform his duties as a criminal investigator with the Federal Protective Service due to his refusal to comply with the two directives issued to him.

___N__ (8) The notoriety of the offense or its impact on the reputation of the agency.

FINDING:

Inapplicable.

__A___ (9) The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question.

FINDING: Agent Scott was specifically advised in the December 21, 2006, letter issued by Chief, Mission Support Hirano that his failure to comply with her two directives by the deadline imposed would result in disciplinary action being taken against him up to and including his removal from federal service. On December 26, 2006 Agent Scott emailed Chief Hirano and asked under what authority she is requesting he answer certain medical questions and authorize release of certain medical information to MRO Dr. Saladino. On December 28, 2006 Chief Hirano replied with the authorities under which she requested this action of Agent Scott. Despite being advised that he was subject to removal for his failure to comply with the directives and despite being advised of the legal authority relied upon to issue the directives he still refused to comply with the directives.

__A___ (10) The potential for the employee's rehabilitation.

FINDING: I see none. In his reply to the proposal to remove him Agent Scott makes it clear that he never intends to comply with the Agency's directives to cooperate in determining his fitness for duty as a Criminal Investigator.

__N__ (11) Mitigating circumstances surrounding the offense such as unusual job tension, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter.

FINDING: Agent Scott appears to justify his failure to comply with the two directives at issue based on claims that the Agency had earlier failed to take appropriate steps in connection with his fitness for duty examinations. In addition, he also appears to argue that his successful completion of the "motor skills" section of his November 2005 incumbent examination somehow shows his cooperation with the Agency's periodic incumbent medical examination program.

Whether or not the Agency failed to take appropriate steps in arranging fitness for duty examinations in the past has no bearing on Agent Scott's ability to comply with two directives regarding his fitness for duty. I note that Ms. Hirano has attempted to resolve these issues in the least-intrusive manner possible. Specifically, one of Ms. Hirano's directives only requires Agent Scott to further release medical information he has already supplied to the Agency to the Agency's MRO in order to determine if Agent Scott's fitness for duty can be determined based strictly on a paper review without the need to resort to a fitness for duty examination. The other directive by Ms. Hirano (that Agent Scott answer the remaining questions he refused to answer on the periodic incumbent medical questionnaire) was required because the Agency's MRO has determined that these questions must be answered before the MRO can medically clear Agent Scott for full duty. Although Agent Scott disagrees that the questions he is required to answer are sufficiently narrowly tailored to address job-related concerns about his medical fitness for duty as a law enforcement officer, Agent Scott must obey this order and grieve it later since he is unable to establish that answering these questions will place him in danger or cause him irreparable harm. Finally Agent Scott's claim that requiring him to supply the information requested violates the Privacy Act is without merit. It is a condition of employment for Agent Scott to cooperate in the Agency's medical testing requirements and the Agency has made every effort to comply with the Privacy Act by requiring a release from Agent Scott prior to releasing the information to the MRO. Because Agent Scott has refused to authorize the release of this information he is no longer in compliance with a condition of his employment. In sum, Agent Scott's claim that the Agency's past handling of these issues somehow justifies his refusal to comply with the Agency's direct orders is completely without merit.

___A__ (12) The adequacy and effectiveness of alternative sanctions to deter such misconduct in the future by the employee.

FINDING: There is no reasonable alternative sanction in this case since Agent Scott's refusal to comply with these orders has resulted in his inability to do his job. It is also unreasonable to re-assign Agent Scott because every job requires an employee to comply with management directives. Nothwithstanding this, I still checked with Region 9 to determine if there was a vacant non-law enforcement job to which Agent Scott could be reassigned. The only available position in Region 9 is not a reasonable solution. This position is a GS-080-12 Security Specialist conducting background investigations on contract employees which is a position requiring a high degree of trust and responsibility.

Agent Scott has demonstrated a contempt for managerial control and thus could not be trusted by management to conduct himself in a professional manner in this position.

FINAL CONCLUSION:

On June 7, 2000, the Assistant Commissioner of the Federal Protective Service issued guidelines for pre-employment and incumbent periodic medicals. This guideline stated, in pertinent part, that any FPS law enforcement officer (other than a FPS Police Officer) selected via competitive procedures May 4, 1999, is subject to that guideline.

A criminal investigator position was advertised by the FPS/Region 9 with a duty station in San Diego on March 7, 2003. Agent Scott applied for the position and was selected via competitive procedures and placed into the position on May 18, 2003. The advertisement and position description stated the incumbent was subject to periodical medical testing as a requirement of the position.

On November 9, 2005 Agent Scott reported for an incumbent periodic medical exam and refused to provide certain information in connection with a medical questionnaire used for that purpose.

On December 21, 2006 the Federal Protective Service Mission Support Chief directed Agent Scott to answer certain medical questions in connection with the medical questionnaire and for Agent Scott approve disclosure of certain other medical information regarding his prior shoulder injury to Medical Review Officer Dr. Saladino. This was needed to determine Agent Scott's fitness for duty since the last medical information on file with the agency still indicated he had a medical condition. She directed him to do so no later than January 5, 2007.

On December 26, 2006 Agent Scott emailed Chief Hirano and asked under what authority she is requesting he answer certain medical questions and authorize release of certain medical information to MRO Dr. Saladino.

On December 28, 2006 Chief Hirano replied with the authorities under which she requested this action of Agent Scott.

On January 5, 2007 Agent Scott sent an email to Chief Hirano to inform her that he had decided not to comply with her direct order to him.

I find the proposal to remove Special Agent Scott from his position with the Federal Protective Service is warranted.

I hereby certify that I have considered the relevant Douglas Factors as indicated above for possible mitigation of the penalty.

NAME *JC Mlynarski* DATE *3-5-07*
Signature of Reviewing Official

TITLE *Dep. Regional Director*

(UPON COMPLETION, THIS DOCUMENT SHOULD BE PLACED IN THE EVIDENCE FILE)

# Deposition of

# Steven Slagowski

the questions, he's required to answer the sufficiently narrow tailored questions to address job-related concerns.

Q. Did you also find that his claim that requiring him to supply the information violated the privacy act, find that that was without merit?

A. Yes.

Q. Why did -- you considered that and found it to be without merit. Why?

A. Because the questions needed were questions that were required in the medical -- the periodical medical that determines whether we're fit or not to do the duty of special agent in the field.

If Mr. Scott felt that somebody was breaking -- if Mr. Scott felt that we were -- I'm not quite sure what his defense is. Was he asking -- was he saying that we -- I am sure. He was asking us to have him break the law. We were not asking him to break the law.

Q. Is there any law that you can think of that would have been violated by Mr. Scott had he --

A. No.

Q. -- undergone the -- had he answered the questions and provided the information?

A. No.

Q. What was the next factor that you considered?

A. "The adequacy and effectiveness of alternative

A. The federal Protective Service, I think there were none.
Q. So he was the only investigator in San Diego for the agency?
A. There were uniformed officers down there, but he was the only investigator.
Q. So the fact that he was unable to perform his duties left FPS with zero investigators in San Diego. Is that correct?
A. That's correct.
Q. Now, it's my understanding that you conducted a review of factors known as Douglas Factors.
A. I did.
Q. Is that correct?
A. I did.
Q. Can you explain what the Douglas Factors are?
A. The Douglas factors are a set of questions that are used to assure -- as far as I know, to assure consistency in the process of dealing with employees that are misbehaving or there might be some form of action taken against the employee. You have to answer these questions to the best of your ability as a deciding --
Q. Before -- okay. So as a deciding official --
A. As a deciding official.
Q. -- before you -- before you take disciplinary

9-21-04

James W. Scott Jr.
09/21/2004 02:23 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Re: Workers Compensatiuon Injury

Okay.......I've got several interviews (the possibly confrontational type) that need to be done. I guess they'll have to wait.

*********************

**John P. Morgan**
09/21/2004 02:05 PM

To: James W. Scott Jr./9PSL/R09/GSA/GOV@GSA
cc: Donald F. Meyerhoff/9PSF/R09/GSA/GOV@GSA
bcc:
Subject: Re: Workers Compensatiuon Injury

Bill:

I just received your FedX containing the "Documentation of Medical Impairment". In lieu of your present condition I believe it prudent that you NOT carry a FPS duty firearm at this time until your condition improves and you are no longer under doctor's care. Please assure me that you will secure your weapon until such time as you are able to proceed with your full range of duties and responsibilities. I am basing my logic in the fact that your injury, as outlined by your physician, would have serious consequences should you be compelled to use your duty weapon in an emergency situation. The liability, both personal and agency related would have negative implications on all concerned. However, you may remain in a duty status and continue in other areas of your work that entail limited use of the affected area, as long as those activities do not exacerbation your current medical condition. If you choose to opt for Sick or Annual Leave during the recovery phase of your condition, please advise. Thanks.

JP

James W. Scott Jr.

James W. Scott Jr.

**James W. Scott Jr.**
09/20/2004 04:16 PM

To:John P. Morgan/9PSF/R09/GSA/GOVcc:Subject:Re: Workers Compensatiuon Injury

EXHIBIT 19

9-21-04
Bill Scott

James W. Scott Jr.
09/21/2004 03:08 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Re: Workers Compensatiuon Injury

My "preference" is to continue carrying the weapon on-duty (at least for self-defense purposes, if for nothing else), but perhaps delay any "suspect interviews" until medically cleared.

The Occupational Medicine appointment is Thursday afternoon, which may change the current medical restrictions.

It's your call....

*****************************************

**John P. Morgan**
09/21/2004 02:32 PM

To: James W. Scott Jr./9PSL/R09/GSA/GOV@GSA
cc: Donald F. Meyerhoff/9PSF/R09/GSA/GOV@GSA
bcc:
Subject: Re: Workers Compensatiuon Injury

Bill:

That's fine with me, go ahead and use your good judgment and discretion as to what you feel is appropriate. Please seek my input if you feel uncertain as to a specific area of concern. Thanks.

JP

James W. Scott Jr.

James W. Scott Jr.

**James W. Scott Jr.**
09/21/2004 02:23 PM

To:John P. Morgan/9PSF/R09/GSA/GOVcc:Subject:Re: Workers Compensatiuon Injury

Okay.......I've got several interviews (the possibly confrontational type) that need to be done. I guess they'll have to wait.

********************

9-23-04

James W. Scott Jr.
09/23/2004 05:10 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Workers Compensation Injury

The Kaiser Permanente Occupational Medicine has confirmed the existance of a work-related "Repetitive Motion Injury" involving my upper right arm and shoulder, and has recommended an "ergonomic evaluation" (which the assigned Physical Therapist will appearantly explain during my first appointment with him/her on Oct 7th. A re-evaluation by Occupational Medicine will occur on Oct. 21, and treatment is currently planned to occur over the period of the next 4-6 weeks.

Carrying a firearm is authorized, and no work restrictions have been imposed. However, 5 minute rests of the injured area every 30 minutes have been directed, along with continued training/usage of the left arm/hand as much as possible until further notice. The original 800mg Ibuprofin (Motrin) dosage (3x day) will continue. The "arm sling" is no longer prescribed.

The updated DMI form will be Fed-X'd

9-29-04

*Federal Protective Service*

**U.S. Department of Homeland Security**
450 Golden Gate Avenue
Suite 5474
San Francisco, California 94102

U.S. Immigration and Customs Enforcement

**DATE:** 9-29-04

| **FROM:** | **TO:** |
| --- | --- |
| **Name** J.P. Morgan SSA | **Name** Catherine Figuracion |
| Fax Number 415-436-7367 | Fax Number 202-501-1998 |
| Telephone # 415-522-3446 | Telephone Number 202-501-1385 |
| Location 450 Golden Gate Ave 5th FL SF, CA 94102 | Location H.Q. |
| Total No. of Pages Including Cover 3 | Correspondence Symbol PS |

COMMENTS: Catherine: Here is SA Scott's medical forms – If they come out unreadable please let me know and I will send via U.S. Postal. Thanks – JPM.

**KAISER PERMANENTE.**
Southern California Permanente Medical Group

NAME [redacted]
MEDICAL RECORD NO.
1080 85 25 M 11
SCOTT JAMES W
IMPRINT KAISER PERMANENTE ID CARD HERE

## Progress Note
## Primary Care

| | |
|---|---|
| Date/Time | (W) 224-9662 - PCP - Lhussen |
| 9/17/04 | CC: (R) shoulder pain — PMH ☐ See Problem List 9/17/04 ☐ Updated |
| Provider: | HPI: work c computer |
| Age 49 | 9o 7 week |
| Wt 196 | (R) shoulder pain — ROS: If unchecked, system not reviewed; describe if abnormal |
| Ht | neck → elbow — NL Abnl / NL Abnl |
| BP 135/90 | took Ibuprofen 200 TID — ☐ ☐ HEENT ☐ ☐ Neuro |
| HR 86 | little help — ☐ ☐ Musco ☐ ☐ Cardio/Vasc |
| Temp 97.0 | thinner — ☐ ☐ Resp ☐ ☐ Psych |
| Smoker Y/N | ☐ ☐ Endocrine ☐ ☐ GI |
| Mammo ______ | ☐ ☐ GU/GYN ☐ ☐ Heme/Onc |
| Pap ______ | ☐ ☐ Allergy/Immun ☐ ☐ Skin |
| Allergies: aspirin | PE: If unchecked, area not examined; describe if abnormal |
| sulfa | NL Abnl / NL Abnl |
| | ☐ ☐ HEENT ☐ ☐ Abdomen |
| Initials: | ☐ ☐ Neck ☐ ☐ Rectal |
| Meds: | ☐ ☐ Lungs ☐ ☐ GU/GYN |
| | ☐ ☐ Chest/Breast ☐ ☐ Skin |
| | ☐ ☐ Heart ☐ ☐ Extremities |
| | ☐ ☐ Back ☐ ☐ Neuro/Psych |
| | (R) shoulder - decreased ROM c abduc. ⊕ pain c abduction ~110° |
| | ⊕ TTP ant/lat shoulder ⊕ pain c rotator cuff testing |
| | strength +5/5 |
| | A/P: (R) Rotator cuff tendonitis / bursitis |
| | → subacromial injection 3cc 1% Lidocaine 1cc 40 Kenalog |
| | → Rx Naprosyn 500 BID pc educ d: GI SE's |
| ETOH Y/N | → ice, rest, sling x 3 days, light duty, thus no OVER/use |
| Birth Cntrl Y/N | → work from [illegible] → ellbow occ med |
| Substance Abuse Y/N | Advice: ☐ Stop Smoking ☐ Alcohol Intake ☐ Birth Control Counseling ☐ Substance Abuse |
| | Provider's Signature [signature] |

NS-0178 (10-01)

KAISER PERMANENTE

## Documentation of Medical Impairment (DMI)

CONFIDENTIAL MEDICAL INFORMATION: This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

IMPORTANT!!!

1080 85 25 M 11 54

SCOTT JAMES V

Medical Record Number (If KP card is not available)

2040 3081

© Copyright 1997 Kaiser Permanente

### 1. Patient Data:

DATE OF THIS VISIT: 01 / 03 / 2001 (Month / Day / Year)

EMPLOYEE STATES LAST DAY WORKED: 01 / 23 / 2001

EMPLOYEE STATES DATE OF INJURY / DATE ILLNESS BEGAN: 2001

DATE OF: Hospital Admit / Outpatient Surgery / EDC: 200

Day / Eve / Night

Medical Release of Records

Telephone Consultation Patient not seen

### 2. Diagnosis or Reason for Impairment:

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction in Section 3.

Adverse Effect Environment; Carpal Tunnel Syndrome; Contusions excludes cerebral; Eye Injury, Superficial, Corneal Abrasion / Foreign Body / Chemical Burn; FX, Ankle / Foot excludes Toe(s); FX, Humerus / Radius / Ulna / Hand / Finger(s); Hernia (prior to surgery); Internal Derangement of Knee (prior to scope); Lacerations / Wounds / Punctures; Radiculopathy (cervical-lumbar) / Sciatica; Sprain / Strain / Pain Cervical / Thoracic / Neck; Sprain / Strain / Pain LE / Hip / Knee / Ankle / Foot / Toe(s); Sprain / Strain / Pain LS / Low Back; Sprain / Strain / Pain UE / Shoulder / Elbow / Wrist / Hand / Finger(s); Tendonitis / Synovitis / Bursitis / Shoulder Impingement

DMI Code (DMI group list on back of this sheet): D

OR Diagnosis Code (ICD9 see ECR)

OR Procedure Code (CPT see ECR)

Written Description of DX code above

OCCUPATIONAL HEALTH

### 3. EMPLOYER INSTRUCTIONS

Recommended Impact on Work:

a. RETURN TO WORK TODAY: Patient can return to work today, without restrictions.

b. OFF WORK (Homebound): Patient completely unable to work (Homebound) for a period of ___ Calendar Day(s) STARTING WITH Month / Day / Year: 200

c. ACTIVITY RESTRICTION(S): Patient can return to work with restriction(s) as noted in Section 4 for a period of 21 Calendar Day(s) STARTING AFTER or WITH Month / Day / Year: 01 / 23 / 2001

d. PERMANENT CONDITION: Patient has reached maximum medical improvement. Restriction(s) listed are permanent. / Patient is permanently totally disabled (ie, anticipate he/she will never return to any work).

### 4. Restriction(s):

Unmarked Box = No Restrictions; check "Comments"

Bending, Climbing, Computer, Driving, Grasping, Hand Motion, Lifting, Pulling, Pushing, Sitting, Squatting, Standing, Twisting, Walking; NO LIFTING OVER ___ Pounds

Cannot Perform

RESTRICTED: MAX. Minutes Per Hour; MAX. Hours Per 8 hr. Shift

FOR WORKERS' COMP QUESTIONS CALL: 1-888-565-9675

FOLLOW-UP PLAN:

TX Duration 4 wk(s)

Next Visit 10/21/04

Therapy Thursday at 2:15 pm

Comments (List assistive devices): Released from CARE

RECOMMEND ERGONOMIC EVALUATION

5# REST(?) 130° WORKER

MAY CARRY FIREARM

Clinician Resource Code:

OPAS / KPDS Example J 0 D 0 E

Date Signed: Month / Day / Year: 09 / 23 / 2004

Circle affiliated Medical Center Area: BALDWIN PARK, BELLFLOWER, FONTANA, KERN COUNTY, LOS ANGELES, ORANGE COUNTY, PANORAMA CITY, RIVERSIDE, SAN DIEGO, SOUTH BAY, WEST LA, WOODLAND HILLS

Clinician Name (print)

NS-8086 (7/00)

PATIENT COPY - WITH DIAGNOSIS PART 1 of 3

KAISER PERMANENTE®

# Documentation of Medical Impairment (DMI)

DR. LEVASSEUR PC MOD
LEVXX PT.LOMA
1080 85 25
SCOTT JAMES W 091704

**CONFIDENTIAL MEDICAL INFORMATION:** This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

PATIENT COPY - WITH DIAGNOSIS PART 1 of 3

## 1. Patient Data:

| | Month | Day | Year | |
|---|---|---|---|---|
| DATE OF THE FORM/ VISIT/DISCHARGE: | 09 | 17 | 2004 | Day (8 am - 5 pm) 1 / Evn (5 pm - 12 am) 2 / Night (12 am - 8 am) 3 |
| EMPLOYEE STATES LAST DAY WORKED: | 09 | 17 | 2004 | Medical Release for Return to Work only, patient not treated for this impairment. 1 |
| EMPLOYEE STATES DATE OF INJURY / DATE ILLNESS BEGAN: | 07 | 06 | 2004 | Telephone Consultation, patient not seen 1 |
| DATE OF: Hospital Admit / Outpatient Surgery / EDC | | | 200 | |

Medical Record Number (If KP card is not available) 091704

2060 0082

© copyright 1997, Kaiser Permanente

## 2. Diagnosis or Reason for Impairment:

**a.** Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

| | | |
|---|---|---|
| Anxiety / Stress / Phobic Disorders: excludes Post Traumatic Stress 01 | Headaches: all types - including Migraine / Cluster 02 | Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) 03 |
| Asthma: all types 04 | Otitis: Externa / Media - includes auricle disorders 05 | Sprain / Strain / Pain: LS / Low Back 06 |
| Bronchitis / Lower Respiratory Infections: excludes Pneumonia 07 | Pneumonia: all types except TB 08 | Tendonitis / Synovitis / Bursitis / Shoulder Impingement 09 |
| Conjunctivitis / Blepharitis / Stye / Chalazion 10 | Skin Infection: Bacterial (Abscess / Cellulitis etc.) - includes I & D 11 | URI (sinusitis-pharyngitis etc.) / Flu / Viral Syn. 12 |
| GI Infections / Gastroenteritis / Diverticulitis / Irritable Bowel 13 | Sprain / Strain / Pain: Cervical / Thoracic / Neck 14 | UTI / Cystitis: excludes Pyelo 15 |

**b.** If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3.

DMI Code (DMI group list on fly sheet): D

OR

Diagnosis Code (ICD - see ECR)

OR

Procedure Code (CPT - see ECR)

AND

Written description for DX code above (2b)

Patient may return to regular work without restrictions 1st day **after** total number of days in **b. + c.** If accommodations not available for restrictions, then patient to be considered disabled for **total** days in **b. + c.** SEE BACK OF FORM FOR MORE INFORMATION.

## 3. EMPLOYER INSTRUCTIONS

**Recommended Impact on Work:**

**a. RETURN TO WORK TODAY**
Patient can return to work today, without restrictions 1

**b. OFF WORK Homebound** Example → 0 2 1
Patient completely unable to work (Homebound) 1
for a period of ___ Calendar Day(s)
STARTING WITH Month ___ Day ___ Year 200_

**c. ACTIVITY RESTRICTION(S)** Example → 0 0 0
Patient can return to work with restriction(s) as noted in Section 4 1
for a period of 007 Calendar Day(s)
STARTING AFTER 3b OR WITH Month 09 Day 17 Year 2004

**d. PERMANENT CONDITION**
Patient has reached maximum medical improvement. Restriction(s) listed are permanent. 1
Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.) 2

## 4. Restriction(s):

NO LIFTING OVER ___ Pounds

| | Bending | Climbing | Computer | Driving | Grasping L (R) | Hand Motion L (R) | Kneeling | Operate Heavy Machinery | Push / Pulling L (R) | Reaching Above Shoulder L (R) | Sitting | Sports | Squatting | Standing | Twisting | Walking | Lifting L (R) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cannot Perform | 1 | 1 | 1 | 1 | 1 (marked) | 1 (marked) | 1 | 1 | 1 (marked) | 1 (marked) | 1 | 1 | 1 | 1 | 1 | 1 | 1 (marked) |
| RESTRICTED MAX: Minutes Per Hour | | | | | | | | | | | | | | | | | |
| RESTRICTED MAX: Hours Per 8 hr. Shift | | | | | | | | | | | | | | | | | |

**FOLLOW-UP PLAN:**

TX Duration ________ wk(s)

Next Visit ___/___/___

Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices):

## 5. Clinician Resource Code:

OPAS / KPDS Example → J 0 0 0 E

B U X X

Date Signed: Month 09 Day 17 Year 2004

Circle affiliated Medical Center Area: BALDWIN PARK / BELLFLOWER / FONTANA / KERN COUNTY / LOS ANGELES / ORANGE COUNTY / PANORAMA CITY / RIVERSIDE / SAN DIEGO / SOUTH BAY / WEST LA / WOODLAND HILLS

Clinician Name (print)

Clinician Signature

NS-8064 (1-04)

10-6-04 Submitted 10-22-04 To HR

**Notice of Occupational Disease and Claim for Compensation**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

**Employee: Please complete all boxes 1 - 18 below. Do not complete shaded areas.**
**Employing Agency (Supervisor or Compensation Specialist): Complete shaded boxes a, b, and c.**

**Employee Data**

1. Name of employee (Last, First, Middle): Scott, James William

2. [Social Security] Number:

3. Date of birth Mo. Day Yr.:

4. Sex: M

5. Home telephone: ( )

6. Grade as of date of last exposure: Level 12 Step 3

7. Employee's home mailing address (Include city, state, and ZIP code):

8. Dependents: ☑ Wife, Husband; ☑ Children under 18 years; ☐ Other

**Claim Information**

9. Employee's occupation: Special Agent/Criminal Investigator

a. Occupation code

10. Location (address) where you worked when disease or illness occurred (Include city, State, and ZIP code):
9797 Aero Drive
San Diego, CA 92123

11. Date you first became aware of disease or illness Mo. Day Yr.: 9 8 04

12. Date you first realized the disease or illness was caused or aggravated by your employment Mo. Day Yr.: 9 18 04

13. Explain the relationship to your employment, and why you came to this realization: The claimant has suffered a "Repetitive Motion Injury" due to excess physical strain from work-related computer mouse usage, and other overtasking. The attached narrative will provide additional details.

14. Nature of disease or illness: Repetitive Motion Injury (pain suffered in upper arm, shoulder, and neck)

OWCP Use - NOI Code | b. Type code | c. Source code

15. If this notice and claim was not filed with the employing agency within 30 days after date shown above in item #12, explain the reason for the delay.
N/A

16. If the statement requested in item 1 of the attached instructions is not submitted with this form, explain reason for delay.
N/A

17. If the medical reports requested in item 2 of attached instructions are not submitted with this form, explain reason for delay.
Submission of these items are pending upon receipt from Kaiser Permanente

**Employee Signature**

18. I certify, under penalty of law, that the disease or illness described above was the result of my employment with the United States Government, and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication. I hereby claim medical treatment, if needed, and other benefits provided by the Federal Employees' Compensation Act.

I hereby authorize any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs (or to its official representative). This authorization also permits any official representative of the Office to examine and to copy any records concerning me.

Signature of employee or person acting on his/her behalf: James W. Scott Date: 10-6-04

Have your supervisor complete the receipt attached to this form and return it to you for your records.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

For sale by the Superintendent of Documents, U.S. Government Printing Office Washington, DC 20402

Form CA-2
Rev. Jan. 1997

The FECA, which is administered by the Office of Workers' Compensation Programs (OWCP), provides the following general benefits for employment-related occupational disease or illness:

(1) Full medical care from either Federal medical officers and hospitals, or private hospitals or physicians of the employee's choice.

(2) Payment of compensation for total or partial wage loss.

(3) Payment of compensation for permanent impairment of certain organs, members, or functions of the body (such as loss or loss of use of an arm or kidney, loss of vision, etc.), or for serious disfigurement of the head, face, or neck.

(4) Vocational rehabilitation and related services where necessary.

The first three days in a non-pay status are waiting days, and no compensation is paid for these days unless the period of disability exceeds 14 calendar days, or the employee has suffered a permanent disability. Compensation for total disability is generally paid at the rate of 2/3 of an employee's salary if there are no dependents, or 3/4 of salary if there are one or more dependents.

An employee may use sick or annual leave rather than LWOP while disabled. The employee may repurchase leave used for approved periods. Form CA-7b, available from the personnel office, should be studied BEFORE a decision is made to use leave.

If an employee is in doubt about compensation benefits, the OWCP District Office servicing the employing agency should be contacted. (Obtain the address from your employing agency.)

For additional information, review the regulations governing the administration of the FECA (Code of Federal Regulations, Title 20, Chapter 1) or Chapter 810 of the Office of Personnel Management's Federal Personnel Manual.

## Privacy Act

In accordance with the Privacy Act of 1974, as amended (5 U.S.C. 552a), you are hereby notified that: (1) The Federal Employees' Compensation Act, as amended (5 U.S.C. 8101, et seq.) (FECA) is administered by the Office of Workers' Compensation Programs of the U.S. Department of Labor, which receives and maintains personal information on claimants and their immediate families. (2) Information which the Office has will be used to determine eligibility for and the amount of benefits payable under the FECA, and may be verified through computer matches or other appropriate means. (3) The information may be given to the Federal agency which employed the claimant at the time of injury in order to verify statements made, answer questions concerning the status of the claim, verify billing, and to consider issues relating to retention, rehire, or other relevant matters. (4) The information may also be given to Federal agencies, other government entities, and to private-sector agencies and/or employers as part of rehabilitative and other return-to-work programs and servies. (5) Information may be disclosed to physicians and other health care providers for use in providing treatment or medical/vocational rehabilitation, making evaluations for the Office, and for other purposes related to the medical management of the claim. (6) Information may be given to Federal, state and local agencies for law enforcement purposes, to obtain information relevant to a decision under the FECA, to determine whether benefits are being paid properly, including whether prohibited dual payments are being made, and, where appropriate, to pursue salary/administrative offset and debt collection actions required or permitted by the FECA and/or the Debt Collection. (7) Disclosure of the claimant's social security number (SSN) or tax identifying number (TIN) on this form is mandatory. The SSN and/or TIN), and other information maintained by the Office, may be used for identification, to support debt collection efforts carried on by the Federal government, and for other purposes required or authorized by law. (8) Failure to disclose all requested information may delay the processing of the claim or the payment of benefits, or may result in an unfavorable decision or reduced level of benefits.

## Receipt of Notice of Occupational Disease or Illness

This acknowledges receipt of notice of disease or illness sustained by:
(Name of injured employee)

James W. Scott, Jr.

I was first notified about this condition on (Mo., Day, Yr.)
9-17-04

At (Location) 450 Golden Gate Ave.
S. F. CA. 94102

| Signature of Official Superior | Title | Date (Mo., Day, Yr.) |
|---|---|---|
| [signature] | Supervisory Special Agent | 10-8-04 |

This receipt should be retained by the employee as a record that notice was filed.

## INSTRUCTIONS FOR COMPLETING FORM CA-2

Complete all items on your section of the form. If additional space is required to explain or clarify any point, attach a supplemental statement to the form. In addition to the information requested on the form, both the employee and the supervisor are required to submit additional evidence as described below. If this evidence is not submitted along with the form, the responsible party should explain the reason for the delay and state when the additional evidence will be submitted.

### Employee (or person acting on the employee's behalf)

Complete items 1 through 18 and submit the form to the employee's supervisor along with the statement and medical reports described below. Be sure to obtain the Receipt of Notice of Disease or Illness completed by the supervisor at the time the form is submitted.

**1) Employee's statement**
In a separate narrative statement attached to the form, the employee must submit the following information:

a) A detailed history of the disease or illness from the date it started.

b) Complete details of the conditions of employment which are believed to be responsible for the disease or illness.

c) A description of specific exposures to substances or stressful conditions causing the disease or illness, including locations where exposure or stress occurred, as well as the number of hours per day and days per week of such exposure or stress.

d) Identification of the part of the body affected. (If disability is due to a heart condition, give complete details of all activities for one week prior to the attack with particular attention to the final 24 hours of such period.)

e) A statement as to whether the employee ever suffered a similar condition. If so, provide full details of onset, history, and medical care received, along with names and addresses of physicians rendering treatment.

**2) Medical report**

a) Dates of examination or treatment.

b) History given to the physician by the employee.

c) Deailed description of the physician's findings.

d) Results of x-rays, laboratory tests, etc.

e) Diagnosis.

f) Clinical course of treatment.

g) Physician's opinion as to whether the disease or illness was caused or aggravated by the employment, along with an explanation of the basis for this opinion. (Medical reports that do not explain the basis for the physician's opinion are given very little weight in adjudicating the claim.)

**3) Wage loss**
If you have lost wages or used leave for this illness, Form CA-7 should also be submitted.

### Supervisor (Or appropriate official in the employing agency)

At the time the form is received, complete the Receipt of Notice of Disease or Illness and give it to the employee. In addition to completing items 19 through 34, the supervisor is responsible for filling in the proper codes in shaded boxes a, b, and c on the front of the form. If medical expense or lost time is incurred or expected, the completed form must be sent to OWCP within ten working days after it is received. In a separate narrative statement attached to the form, the supervisor must:

a) Describe in detail the work performed by the employee. Identify fumes, chemicals, or other irritants or situations that the employee was exposed to which allegedly caused the condition. State the nature, extent, and duration of the exposure, including hours per days and days per week, requested above.

b) Attach copies of all medical reports (including x-ray reports and laboratory data) on file for the employee.

c) Attach a record of the employee's absence from work caused by any similar disease or illness. Have the employee state the reason for each absence.

d) Attach statements from each co-worker who has first-hand knowledge about the employee's condition and its cause. (The co-workers should state how such knowledge was obtained.)

e) Review and comment on the accuracy of the employee's statement requested above.

The supervisor should also submit any other information or evidence pertinent to the merits of this claim.

### Item Explanations: Some of the items on the form which may require further clarification are explained below.

**14. Nature of the disease or illness**
Give a complete description of the disease or illness. Specify the left or right side if applicable (e.g., rash on left leg; carpal tunnel syndrome, right wrist).

**20. Employee's duty station, street address and ZIP code**
The street address and zip code of the establishment where the employee actually works.

**24. First date medical care received**
The date of the first visit to the physician listed in item 23.

**33. Was the injury caused by third party?**
A third party is an individual or organization (other than the injured employee or the Federal government) who is liable for the disease. For instance, manufacturer of a chemical to which an employee was exposed might be considered a third party if improper instructions were given by the manufacturer for use of the chemical.

**19. Agency name and address of reporting office**
The name and address of the office to which correspondence from OWCP should be sent (if applicable, the address of the personnel or compensation office).

**23. Name and address of physician first providing medical care**
The name and address of the physician who first provided medical care for this injury. If initial care was given by a nurse or other health professional (not a physician) in the employing agency's health unit or clinic, indicate this on a separate sheet of paper.

**32. Employee's Retirement Coverage.**
Indicate which retirement system the employee is covered under.

### Employing Agency - Required Codes

**Box a (Occupational Code), Box b, (Type Code), Box c (Source Code), OSHA Site Code**
The Occupational Safety and Health Administration (OSHA) requires all employing agencies to complete these items when reporting an injury. The proper codes may be found in OSHA Booklet 2014, Record Keeping and Reporting Guidelines.

**OWCP Agency Code**
This is a four digit (or four digit two letter) code used by OWCP to identify the employing agency. The proper code may be obtained from your personnel or compensation office, or by contacting OWCP.

**Official Supervisor's Report of Occupational Disease: Please complete information requested below**

**Supervisor's Report**

19. Agency name and address of reporting office (include city, state, and ZIP Code)
Dept. of Homeland Security, Federal Protective Service
455 Golden Gate Ave., 5th Fl. S.F. CA. 94102
ZIP Code

OWCP Agency Code

OSHA Site Code

20. Employee's duty station (Street address and ZIP Code)
880 Front St, S.D. CA. 92101 (Assigned to FBI Bldg – 9771 Aero Dr., S.D. CA. 92123)
ZIP Code

21. Regular work hours From: 7 : ☒ a.m. ☐ p.m. To: 5 : ☐ a.m. ☒ p.m.

22. Regular work schedule ☐ Sun. ☒ Mon. ☒ Tues. ☒ Wed. ☒ Thurs. ☒ Fri. ☐ Sat.
M–F

23. Name and address of physician first providing medical care (include city, state, ZIP code)
Dr. Christina Bui
3250 Fordham St. San Diego CA. 92110

24. First dat medical care received Mo. Day Yr. 7 / 17 / 04

25. Do medical reports show employee is disabled for work? ☒ Yes ☐ No

26. Date employee first reported condition to supervisor Mo. Day Yr. 7 / 17 / 04

27. Date and hour employee stopped work Mo. Day Yr. N/A Time: ☐ a.m. ☐ p.m.

28. Date and hour employee's pay stopped Mo. Day Yr. N/A Time ☐ a.m. ☐ p.m.

29. Date employee was last exposed to conditions alleged to have caused disease or illness Mo. Day Yr. 7 / 21 / 04

30. Date returned to work Mo. Day Yr. N/A Time : ☐ a.m. ☐ p.m.

31. If employee has returned to work and work assignment has changed, describe new duties
Employee never requested to be off work and his assignments remained the same, but employee directed on 9/21/04 to address his injury and modify his work habits.

32. Employee's Retirement Coverage ☐ CSRS ☒ FERS ☐ Other, (Specify)

33. Was injury caused by third party? ☐ Yes ☒ No
If "No," go to Item 34.

34. Name and address of third party (include city, state, and ZIP code)
N/A

**Signature of Supervisor**

35. A supervisor who knowingly certifies to any false statement, misrepresentation, concealment of fact, etc., in respect to this Claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception: (see attached)

Name of Supervisor (Type or print)
[illegible]

Date
[illegible]

Signature of Supervisor
[signature]

Office phone
[illegible]

Supervisor's Title
Supervisory Special Agent
Federal Protective Service Region 9

Form CA-2
Rev. Jan. 1997

10-1-07

Employee's Statement

October 7, 2004

I. History of the Injury

On the morning of September 8, 2004, I began to experience a "burning pain" in the area of my Upper Right Arm, Right Shoulder, and Right Side of my Neck. This resulted in me beginning a 60mg dosage of Ibuprofen (over-the-counter version) several times per day. Upon arriving at my workplace, routine use of my Right Arm continued to result in pain and discomfort, but was magnified in the above stated affected areas when I continued to use my Right Hand, Arm, and Shoulder for "computer mouse work" throughout the day. With this in mind, I (who am right-handed dominant), began to train and improve the dexterity of my Left-Hand in "computer mouse usage" and other workday functions. Additionally, in an effort to give my Right Arm a rest, I took "8" hours of Sick Leave the following day, but returned to work on the third day and experienced a similar level of pain in my Right Arm and Shoulder.

The following week, on September 17, 2004, I made a medical appointment with Kaiser Permanente, Primary Care Physician Bui, due to ongoing pain and discomfort in the affected areas. After the examination, Dr. Bui diagnosed me as suffering from a work-related "Repetitive Motion Injury" (i.e., resulting in Tendonitis of the Right Arm and Shoulder). After receiving a steroid injection in my Right Shoulder, I was placed on 800mg of Ibuprofen (three times per day), prescribed a "sling" to temporary immobilize the use of my Right Arm, and was advised of medical restrictions regarding "no grasping, hand motion, pushing/pulling, reaching above the shoulder, or lifting with the Right Hand or Shoulder". With the above the mind, I notified FPS Supervisory Special Agent John Morgan of the above information by e-mail, forwarded him a copy of my Kaiser Permanente/Document of Medical Impairment Form, and advised him that further treatment of this injury was being referred to the Kaiser Permanente/Department of Occupational Medicine.
*Note: On September 21 2004, Senior SA Morgan temporarily restricted me from carrying my FPS issued firearm due to the above medical restrictions, though advising me to continue on duty status, but restrict my activities to those which would not exacerbate my current medical condition.

On September 23, 2004, after being examined by Kaiser Permanente/Occupational Medical Physician Thomas Wang, I was referred to Physical Therapy for additional treatment, an Ergonomic Evaluation was recommended, my previously prescribed daily dosage of Ibuprofen was continued, and it was recommended that until further notice I allow a 5-minute rest of my Right Arm and Shoulder approximately every 30 minutes. A follow up examination was scheduled for October 21, 2004.
*Note: Dr. Wang's medical recommendation was that I could continue to carry my agency issued firearm, and that further use of "the sling" was to be discontinued. An additional Document of Medical Impairment Form updating the Claimant status was also forwarded to FPS Supervisory Special Agent Morgan.

II. Conditions of Employment Responsible

Back on 6-11-03, FPS Special Agent in Charge Michael Conrad met with me in San Diego for a meeting with FBI/Joint Terrorism Task Force (JTTF) Supervisors Chris Connelly and Alex Murray. SAC Conrad passed a letter to them which he later advised was a request for my appointment with the FBI/Joint Terrorism Task Force. During the meeting with the FBI/JTTF officials, SAC Conrad confirmed with them that my position with their JTTF would be a "full-time" assignment.

Two months later, on 8-11-03, I received an e-mail from FPS SAC Conrad advising me that I was "still responsible and getting all intelligence information for the San Diego area and providing it to my colleagues at the Federal Protective Service" (though he knew I had been assigned to a "full-time position" with the local FBI/Joint Terrorism Task Force. This prompted me to later telephone FPS SAC Conrad in order to remind him of the depth of responsibilities connected with a "full-time" position with the JTTF, and remind him of his earlier promise that my "old Criminal Investigator position would be filled". However, SAC Conrad then admitted for the first time that the agency had "no intention of replacing my old GS-11 Criminal Investigator position", therefore I would be responsible for the duties of <u>both</u> (i.e., Intelligence Gathering and Criminal Investigations for FPS & International Terrorism (IT) Investigator for the FBI JTTF).
*Note: Therefore, both the FBI and I had clearly been "deceived" concerning my new "full-time" appointment to their Joint Terrorism Task Force.

On 8-12-03, I sent an e-mail to U.S. Office of Special Counsel (OSC) Investigator Robert McClain advising of FPS SAC Conrad's admission that our agency officials had little intention of hiring a replacement for my vacant GS-11 Criminal Investigator position as the only local FPS Criminal Investigator/Intelligence Agent in the San Diego area (though I was now assigned to full-time FBI JTTF duties).
*Note: In compliance with Public Law 96-303 (the U.S. Government's Code of Ethics for Federal Employees), I had previously requested that the U.S. Office of Special Counsel conduct an investigation into well-documented "gross mismanagement" and "abuse of authority", as well as long-term "unethical and illegal activities" occurring in my agency (and that my agency officials were aware of my request to OSC for this investigation).

On 8-13-03, I sent an e-mail to FPS SAC Conrad in response to him forwarding <u>false information</u> to various agency officials (via e-mail), alleging that I was briefed by him at my start on full-time FBI/JTTF, concerning my "also being responsible for my previous <u>now vacant</u> CI position's duties at the Federal Building as well". In short, I advised that this e-mail comment by him "was not factual", and that previous to 8-11-03, I (and others) were given a "false impression" that the GS-11, FPS Criminal Investigator position in San Diego would be filled by another (due to my transfer to "full-time" FBI/JTTF). This message prompted an immediate response from FPS Regional Director Joseph Loerzel, who demanded to know, "Who told me that FPS would be putting another CI in San Diego?"

*Note: "Both" FPS San Diego Area Security Manager Anna Hughes and I had been advised by Conrad that an additional FPS Criminal Investigator would being hired locally to fill the old position and it's responsibilities.

On 9-4-03, I met with FPS SAC Conrad for breakfast in San Diego and was informed by him that agency officials had decided "not to hire another FPS Special Agent for San Diego, but had planned to do so for Phoenix, AZ". Previous to his comment, I had advised Conrad in detail concerning my FBI/JTTF International Terrorism duties and responsibilities and then stated "you can't expect one person to perform "2" full-time positions at the same time". Also, previous to his comments, I had explained to Conrad that local experts considered Southern California as a "hub" for Middle Eastern "fundamentalist extremism", and explained that San Diego was a "target rich environment" (mentioning the local concentration of both the military and non-military Federal facilities-to include the local drive-through Federal building downtown which was a "soft target" due to unrestricted pedestrian and vehicular traffic passing underneath it). Lastly, I warned SAC Conrad that "over-tasking" one person with too many responsibilities at once greatly increased the possibility of "serious mistakes" being made, as well as other important tasking not being accomplished correctly.

On 9-8-03, I received a copy of an e-mail message to FPS Area Security Manager Anna Hughes confirming FPS SAC Conrad's earlier information, that there were <u>now</u> (3) FPS Special Agents resident in Phoenix, AZ. It should be noted that one FPS Special Agent there occupies a similar position as I, a full-time FBI JTTF (Joint Terrorism Task Force assignment), though the "2" additional FPS Special Agents were responsible for the "other required duties" in the Field Office.

On 7-7-04 & 7-8-04, during an Off-Site Meeting of FPS Regional Criminal Investigators locally, I also discovered that additional FPS Special Agents had also recently been "added" to the current Special Agent staffing in both the San Francisco and Los Angeles Field Offices in the Region. Additionally, during that event, FPS Regional Director Loerzel announced his intention to increase the number of "General Crimes" case assignments to FPS Special Agents in his Region, regardless of their responsibilities with their FBI/JTTFs.
*Note: FPS Regional Director Loerzel, who has extensive oversight authority concerning both the hiring and geographical assignments of FPS Special Agents in the Region, was clearly aware of my ongoing "over-tasking" with duties and responsibilities, and that I was the "only" Special Agent assigned to the Southern California border area.

As of that date, I have repeatedly been ignored in my requests for additional investigative manpower in the Southern California Border Areas, explaining in detail how the refusal to hire additional FPS Special Agents (as done elsewhere in the Pacific Rim Region) clearly not only over-tasks me with responsibilities, but also impedes our agency's mission and responsibilities locally (as well as violating the earlier commitment made to the local FBI/JTTF).

What I did not expect, at least until September 8, 2004, was that the ongoing refusal to assigned appropriate investigative resources locally would also result in this work-related Repetitive Motion Injury as well (as both the medical and non-medical evidence reveals).

III. Stressful Conditions Causing the Injury

Primarily, I perform most of my office-related duties in a small cubicle at the local Federal Bureau of Investigation facility in San Diego, CA., though occasional investigative fieldwork is also performed as well. Routinely, I have a five-day workweek, in general comprising a 10-hour workday (i.e. a 50-hour workweek).

As addressed above, besides being assigned "full-time" as an International Terrorism (IT) Investigator on the local FBI/Joint Terrorism Task Force, my agency officials have additionally tasked me with performing the duties and responsibilities of my previous position as the "only" FPS Special Agent/Criminal Investigator & Intelligence Agent along the entire Southern California border with Mexico (i.e., specifically San Diego and Imperial Counties).

In my "full-time" FBI/Joint Terrorism Task Force position, I perform as an FBI trained Counter-Terrorism Agent assigned to follow-up on investigator leads pertaining to information on possible International Terrorist-related operations, support, planning, intelligence gathering, and the activities of possible foreign intelligence agents operating in the San Diego area. My routine FBI/JTTF assignments involve light to moderate usage of a computer for daily e-mail review and response, IT investigative report writing, and the relay of occasional FBI/Intelligence Bulletins to my agency (i.e., the Federal Protective Service).

In my additional FPS Special Agent/Criminal Investigator position, I perform as the only local FPS trained "General Crimes" Investigator, and my agency's only local "Criminal Intelligence" Investigator as well. As a "General Crimes" Investigator, I am assigned to follow-up on investigator leads pertaining to both personal and property crimes involving Federal Facilities in the border region of Southern California (though Administrative Investigations are also sometimes part of this tasking). As a "Criminal Intelligence" Investigator, I am tasked with the daily gathering and dissemination of all local "open source" and "law enforcement sensitive" intelligence related information which has a possible nexus with local U.S. Government facilities or their operations. My routine "General Crimes" Investigator assignments involve light to moderate usage of the computer on a daily basis, but my "Criminal Intelligence" Investigator position involves moderate to high usage of the computer daily. Additionally, reviewing and responding to FPS e-mail communications, and administrative report writing also involves moderate computer usage on a regular basis.

By applying simple logic, "over-tasking" me with too many responsibilities which involve "computer usage" simply "over-stressed" my Right Arm and Shoulder, therefore logically being the "stressful condition which caused the injury".

IV. Part of the Body Affected

On September 8, 2004, I began to experience regular pain in my Right Upper Arm and Shoulder Area, which sometimes radiated up the Right Side of my Neck. During both the 24 hours prior to the onset of pain in these areas, as well as other activities one-week prior, a vast majority of each workday was spent in computer-related activities (i.e., viewing and responding to agency e-mail, preparing various administrative and investigative reports, conducting Internet related intelligence research, etc.), though investigative note-taking and telephone usage was sometimes considerable as well.

V. Whether the Employee Ever Suffered a Similar Condition

I do not recall ever experiencing a similar medical condition or injury to the same above affected area.

James W. Scott
Special Agent
DHS/FPS

10-15-04

Attachment to CA-2, Questions 27 through 31 regarding Special Agent James W. Scott Jr.:

On the morning of September 17, 2004, Special Agent Scott contacted me via e-mail and informed me that he had a medical appointment scheduled later that morning and would fax me a leave slip afterwards. In the afternoon of September 17, 2004 Agent Scott again forwarded me an e-mail advising me of the outcome of his morning appointment. As related to me via e-mail the injury was diagnosed as work-related "Tendonitis" of the upper-right arm and shoulder area. Agent Scott emphasized that a week prior to this date, due to "computer mouse usage" he began to feel pain in the above described areas. His physician recommended job and duty restrictions commencing September 17, 2004 and continuing for 7 days. The physician noted that Agent Scott should restrict movement, ie; grasping, hand motion, pushing/pulling, reaching above the shoulder and lifting with the right hand and arm. Additionally, a sling was issued by the physicians staff to immobilize the area to promote healing.

On September 20, 2004 I contacted Agent Scott via e-mail and requested he complete the CA-2 form on his injury. I informed him that I would contact him once I received all the documentation.

Again on September 20, 2004 I contacted Agent Scott via e-mail and asked him if he wanted to go on Sick Leave until he felt better. His immediate reply was, "preferably not, unless the pain increases". At that time he informed me that he was prescribed medication identified as 800mg of Motrin three (3) times a day. He also received from his physician a steroid injection applied in the right shoulder area the previous Friday, September 17, 2004. He also informed me that there would be an Occupational Medicine follow-up this very afternoon.

On September 21, 2004 I received Agent Scott's Fed X containing the "Documentation of Medical Impairment". Upon reading the information I became concerned that as he was right handed, suffering from pain and was immobilizing the shoulder and extremities, he should not be carrying his duty weapon. I surmised, that having such an injury and being unable to respond effectively with his duty weapon could have serious repercussions. I also informed Agent Scott that he could remain in a duty status and continue working as long as he abided by his physicians restrictions and his activities did not exacerbate his current medial condition. I even gave him the option of going on Annual or Sick Leave during the recovery phase of his illness.

On September 21, 2004, Agent Scott, through an e-mail informed me that his "preference was to continue carrying the weapon on duty (at least for self-defense purposes, if for nothing else, and delay any "suspect interviews" until medically cleared.

On September 23, 2004, Agent Scott, through e-mail informed me that Kaiser Permanente Occupational Medicine confirmed the existence of a work-related "Repetitive Motion Injury" involving the upper right arm and shoulder and recommended an "ergonomic evaluation". Agent Scott went on to explain that over the next 4 to 6

weeks that his treatment would be on-going. Agent Scott also informed me his e-mail that his physician has removed all restriction on his duty status, including him returning to use of his authorized duty weapon.

On October 13, 2004, I requested that Agent Scott assist me in completing the CA-2 form, by forwarding me information regarding his claim. I subsequently received this information in an e-mail the following day.

Since the date of injury I have attempted to address Agent Scott's condition with an approach predicated on his physical well-being and also the effect his injury might have on his duty related activities and responsibilities. Since the onset of this particular injury I have been sympathetic and understanding. I have allowed him to conduct business as he saw fit, with limited intervention. He has had the privilege of managing his own daily activities as long as it did not negatively impact on his physical recovery. I suggested he place himself in a leave capacity until he recovered sufficiently to return to full duty, but he opted to continue working. My only restriction was that he continue to keep me apprised of his condition and inform me when he would be away from duty in a leave capacity for treatment.

Submitted by:

J. P. Morgan, Supervisory Special Agent
Department of Homeland Security
Federal Protective Service, Region 9
450 Golden Gate Avenue, 5th Floor
San Francisco, CA. 94102
Office: 415-522-3446
Cell: 916-275-6405

Approved by:

Donald F. Meyerhoff, Chief
Threat Management Branch
Department of Homeland Security
Federal Protective Service, Region 9
450 Golden Gate Avenue, 5th Floor
San Francisco, CA. 94102
Office: 415-522-3441
Cell: 415-760-4512

10-19-04

James W. Scott Jr.
10/19/2004 10:54 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: re: Medical Appointments

Perhaps you should re-read the specifics of my "Employees Statement" attached to the Notice of Occupational Disease and Claim for Compensation (CA-2). It clearly states that the Kaiser Permanente, Occupational Medicine physician gave a medical recommendation that, "further use of the sling was to be discontinued" back on September 23, 2004.

As stated in earlier documentation previously submitted to you, I am currently attending regular appointments for Physical Therapy, continue to take prescription Ibuprofen daily, and attempt to take the five-minute computer breaks every 30 minutes as recommended. The Kaiser Permanente, Department of Physical Therapy, has placed me on a specific "stretching and free weight" exercise routine which I comply with daily, and my next Physical Therapy appointment is 5 PM this afternoon. Other than that, as previously addressed, I continue to train my "left arm and shoulder" in computer-related functions in order to avoid further over-tasking my "right arm and shoulder" (which caused the injury). As for the recommendation of an Ergonomic Evaluation, I have spoken with the health nurse at the FBI facility locally, who advises me that next week she is attending a training course involving this very issue and will meet with me upon her return.

10-18-04

John P. Morgan
10/18/2004 03:33 PM

To:
cc:
cc:
Subject: Re: Medical Appointments

----- Forwarded by John P. Morgan/9PSF/R09/GSA/GOV on 10/18/2004 03:50 PM -----

John P. Morgan
10/18/2004 02:58 PM

To: James W. Scott Jr./9PSL/R09/GSA/GOV
cc: Donald F. Meyerhoff/9PSF/R09/GSA/GOV,
bcc:
Subject: Re: Medical Appointments

Bill:

Sounds good.

Also, I received you CA-2 information. I have an area that concerns me. It appears you may still be conducting the same work activities that, in your doctors opinion, caused your "mouse-related" arm and should injury. Is that the case? I was under the impression that you were wearing a sling and taking breaks and other necessary precautions so as not to cause further damage. If you haven't changed your work habits regarding the "mouse" I suggest you immediately curtail use of the device and find an alternative. I have been attentive to your medical condition, but at the same time I must address the issue of whether you can perform your duties as confirmed by your doctor or suffer further injury by continued use. As I am your supervisor and we are hundreds of miles apart, I can only rely on you to keep me apprised. It has been a month since your "mouse related injury" and I am unaware whether you have employed recommendations from your doctor in caring for your condition. If need be, I will come to San Diego and make a determination at that time on what course of action I will have to initiate in order to protect you from further injury and safeguard the interests of the FPS. Please send me more detailed information as to what you have done and are currently doing, [when, how and where], in addressing whether those activities are condusive to a recovery program. Also, I will be contacting your JTTF Supervisor advising him of your restrictions as well so that work related computer/mouse activity will not hinder your recovery period. Thanks.

JP
James W. Scott Jr.

James W. Scott Jr.
10/18/2004 11:27 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Medical Appointments

I have "1" work-related medical appointment scheduled for this week during duty hours (i.e., 10-21-04 at 2:15pm). I will FAX you the S/L slip later today.

–

10-11-04

**John P. Morgan**
10/19/2004 02:34 PM

To: James W. Scott Jr./9PSL/R09/GSA/GOV
cc: Donald F. Meyerhoff/9PSF/R09/GSA/GOV,
cc: John P. Morgan/9PSF/R09/GSA/GOV
Subject: Re: Medical Appointments

Bill:

My only concern was that he did not fully recognize your condition. Now that you have forwarded your CA-2 w/attachments to him, I will contact him before the end of the week in order that we both may be able to address your injury. Thanks.

JP
James W. Scott Jr.

**James W. Scott Jr.**
10/19/2004 02:03 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Re: Medical Appointments

Though I have briefly spoken with my FBI/JTTF Supervisor concerning this injury previously, based on your decision to contact him concerning it, I have forwarded him a copy of my CA-2 w/ attachments so that he can review it's specifics fully.

*******************
**John P. Morgan**
10/18/2004 03:33 PM

To: James W. Scott Jr./9PSL/R09/GSA/GOV@GSA
cc: Donald F. Meyerhoff/9PSF/R09/GSA/GOV@GSA
bcc:
Subject: Re: Medical Appointments

Bill:

Sounds good.

Also, I received you CA-2 information. I have an area that concerns me. It appears you may still be conducting the same work activities that, in your doctors opinion, caused your "mouse-related" arm and should injury. Is that the case? I was under the impression that you were wearing a sling and taking breaks and other necessary precautions so as not to cause further damage. If you haven't changed your work habits regarding the "mouse" I suggest you immediately curtail use of the device and find an alternative. I have been attentive to your medical condition, but at the same time I must address the issue of whether you can perform your duties as confirmed by your doctor or suffer further injury by continued use. As I am your supervisor and we are hundreds of miles apart, I can only rely on you to keep me apprised. It has been a month since your "mouse related injury" and I am unaware whether you have employed recommendations from your doctor in

caring for your condition. If need be, I will come to San Diego and make a determination at that time on what course of action I will have to initiate in order to protect you from further injury and safeguard the interests of the FPS. Please send me more detailed information as to what you have done and are currently doing, [when, how and where], in addressing whether those activities are condusive to a recovery program. Also, I will be contacting your JTTF Supervisor advising him of your restrictions as well so that work related computer/mouse activity will not hinder your recovery period. Thanks.

JP

James W. Scott Jr.

James W. Scott Jr.

**James W. Scott Jr.**
10/18/2004 11:27 AM

To:John P. Morgan/9PSF/R09/GSA/GOVcc:Subject:Medical Appointments

I have "1" work-related medical appointment scheduled for this week during duty hours (i.e., 10-21-04 at 2:15pm). I will FAX you the S/L slip later today.

KAISER PERMANENTE

## Documentation of Medical Impairment (DMI)

CONFIDENTIAL MEDICAL INFORMATION: This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

1080 85 25 M 11 54
SCOTT, JAMES W
102104

Medical Record Number (If KP card is not available)

2040 3081

© copyright 1997 Kaiser Permanente

### 1. Patient Data:

| | Month | Day | Year | |
|---|---|---|---|---|
| DATE OF THIS FORM VISIT/DISCHARGE | 10 | 21 | 2004 | Day / Eve / Night |
| EMPLOYEE STATES LAST DAY WORKED | 10 | 21 | 2004 | Medical Release for Return to Work only, patient not treated for this impairment |
| EMPLOYEE STATES DATE OF INJURY / DATE ILLNESS BEGAN | 09 | 08 | 2004 | Telephone Consultation, patient not seen |
| DATE OF: Hospital Admit / Outpatient Surgery / EDS | | | 200 | |

### 2. Diagnosis or Reason for Impairment:

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3

| | | |
|---|---|---|
| Adverse Effect Environment 01 | FX Humerus / Radius / Ulna / Hand / Finger(s) 02 | Sprain / Strain / Pain: Cervical / Thoracic / Neck 03 |
| Carpal Tunnel Syndrome 04 | Hernia (prior to surgery) 05 | Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) 06 |
| Contusions: excludes cerebral 07 | Internal Derangement of Knee (prior to scope) 08 | Sprain / Strain / Pain: LS / Low Back 09 |
| Eye Injury - Superficial Corneal Abrasion / Foreign Body / Chemical Burn 10 | Lacerations / Wounds / Punctures 11 | Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) 12 |
| FX Ankle / Foot excludes Toe(s) 13 | Radiculopathy (cervical-lumbar) / Sciatica 14 | Tendonitis / Synovitis / Bursitis / Shoulder Impingement 15 |

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3:

DMI Code (DMI group list on fly sheet): D
OR
Diagnosis Code (ICD - see ECR)
OR
Procedure Code (CPT - see ECR)
AND
Written description for DX code above (2b)

OCCUPATIONAL MEDICINE

### 3. EMPLOYER INSTRUCTIONS

Patient may return to regular work without restrictions the day after total number of days in 3b or 3c. If accommodations not available for restrictions, then patient is to be considered disabled for total days in 3c. SEE BACK OF FORM FOR MORE INFORMATION.

**Recommended Impact on Work:**

a. RETURN TO WORK TODAY: Patient can return to work today without restrictions

b. OFF WORK Homebound — Example → 0 2 1 — Patient completely unable to work (Homebound) for a period of ___ Calendar Day(s) STARTING WITH Month ___ Day ___ Year 200_

c. ACTIVITY RESTRICTION(S) Example → 0 1 0 — Patient can return to work with restriction(s) as noted in Section 4 for a period of ___ Calendar Day(s) STARTING AFTER IS OR WITH Month ___ Day ___ Year 200_

d. PERMANENT CONDITION
1. Patient has reached maximum medical improvement. Restriction(s) listed are permanent.
2. Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.)

### 4. Restriction(s):

Unmarked Box = No Restrictions check "Comments"

| | Bending | Climbing | Computer | Driving | Grasping L | Grasping R | Hand Motion L | Hand Motion R | Kneeling | Push/Pull L | Push/Pull R | Reach Above Shoulder | Sitting | Squatting | Standing | Twisting | Walking | Lifting | NO LIFTING OVER ___ Pounds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cannot Perform | | | | | | | | | | | | | | | | | | | |
| RESTRICTED MAX: Minutes Per Hour | | | | | | | | | | | | | | | | | | | |
| RESTRICTED MAX: Hours Per 8 hr. Shift | | | | | | | | | | | | | | | | | | | |

FOR WORKERS' COMP QUESTIONS CALL 1-888-565-9675

FOLLOW-UP PLAN:
TX Duration 4 wk(s)
Next Visit 11/15/04
Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices): Released from CARE
5' REST / 30" WORKED
Monday at 2:15pm

Clinician Resource Code: OPAS / KPDS Example → J O D O E
I W A N I T H

Date Signed: Month 10 Day 21 Year 2004

Circle affiliated Medical Center Area: BALDWIN PARK, BELLFLOWER, FONTANA, KERN COUNTY, LOS ANGELES, ORANGE COUNTY, PANORAMA CITY, RIVERSIDE, SAN DIEGO, SOUTH BAY, WEST LA, WOODLAND HILLS

Clinician Name (print): [signature]

NS-8088 (1/04)

PATIENT COPY - WITH DIAGNOSIS PART 1 of 3

10-25-04

**James W. Scott Jr.**
10/25/2004 07:29 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Physical Therapy

FYI...I have a work-related Physical Therepy appointment at 9:30am this morning (& will FAX the S/L slip later).

11-1-04

**John P. Morgan**
11/01/2004 07:38 AM

To: James W. Scott Jr./9PSL/R09/GSA/GOV
cc:
cc: John P. Morgan/9PSF/R09/GSA/GOV, Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Re: Medical Appointment

10-4
James W. Scott Jr.

**James W. Scott Jr.**
11/01/2004 07:31 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Medical Appointment

FYI...I have a 9:30am work-related Medical Appointment this morning (i.e., for Physical Therapy) and will FAX you the S/L slip later today.

11-8-04

**James W. Scott Jr.**
11/08/2004 10:23 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Medical Appointment

I have a work-related Physical Therapy appointment tomorrow morning at 8am & will FAX the S/L slip later.

KAISER PERMANENTE

## Documentation of Medical Impairment (DMI)

CONFIDENTIAL MEDICAL INFORMATION: This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

1080 85 25 M 11 54
SCOTT JAMES W

**1. Patient Data:**

| | Month | Day | Year | Day 8 am - 5 pm | Evn 5 pm - 12 am | Night 12 am - 8 am |
|---|---|---|---|---|---|---|
| DATE OF THE FORM/ VISIT/DISCHARGE: | 12 | 13 | 2004 | 1 | 2 | 3 |
| EMPLOYEE STATES LAST DAY WORKED: | 12 | 13 | 2004 | Medical Release for Return to Work only, patient not treated for this impairment. 1 | | |
| EMPLOYEE STATES DATE OF INJURY / DATE ILLNESS BEGAN: | 09 | 08 | 2004 | Telephone Consultation, patient not seen 1 | | |
| DATE OF: Hospital Admit / Outpatient Surgery / EDC | | | 200 | | | |

Medical Record Number (If KP card is not available)
121304

2040 3081

© copyright 1997, Kaiser Permanente

**2. Diagnosis or Reason for Impairment:**

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

| | | |
|---|---|---|
| Adverse Effect Environment 01 | FX: Humerus / Radius / Ulna / Hand / Finger(s) 02 | Sprain / Strain / Pain: Cervical / Thoracic / Neck 03 |
| Carpal Tunnel Syndrome 04 | Hernia (prior to surgery) 05 | Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) 06 |
| Contusions: excludes cerebral 07 | Internal Derangement of Knee (prior to scope) 08 | Sprain / Strain / Pain: LS / Low Back 09 |
| Eye Injury - Superficial: Corneal Abrasion / Foreign Body / Chemical Burn 10 | Lacerations / Wounds / Punctures 11 | Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) 12 |
| FX: Ankle / Foot excludes Toe(s) 13 | Radiculopathy (cervical-lumbar) / Sciatica 14 | Tendonitis / Synovitis / Bursitis / Shoulder Impingement 15 |

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3.

DMI Code (DMI group list on fly sheet): D

OR

Diagnosis Code (ICD - see ECR)

OR

Procedure Code (CPT - see ECR)

AND

Written description for DX code above (2b)

**3. EMPLOYER INSTRUCTIONS**

**Recommended Impact on Work:**

Patient may return to regular work without restrictions 1st day after total number of days in b. + c. If accommodations not available for restrictions, then patient to be considered disabled for total days in b. + c. SEE BACK OF FORM FOR MORE INFORMATION.

a. RETURN TO WORK TODAY
1 Patient can return to work today, without restrictions

b. OFF WORK Homebound (Example → 0 2 1)
1 Patient completely unable to work (Homebound) for a period of ___ Calendar Day(s)
STARTING WITH Month ___ Day ___ Year 200_

c. ACTIVITY RESTRICTION(S) (Example → 0 0 0)
1 Patient can return to work with restriction(s) as noted in Section 4 for a period of ___ Calendar Day(s)
STARTING AFTER 3b OR WITH Month ___ Day ___ Year 200_

d. PERMANENT CONDITION
1 Patient has reached maximum medical improvement. Restriction(s) listed are permanent.
2 Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.)

**4. Restriction(s):**

Unmarked Box = No Restrictions check "Comments"

| | Bending | Climbing | Computer | Driving | Grasping L | Grasping R | Hand Motion L | Hand Motion R | Kneeling | Push/Pulling L R | Reaching Above Shoulder L R | Sitting | Squatting | Standing | Twisting | Walking | Lifting L R | NO LIFTING OVER Pounds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cannot Perform | 1 | 1 | 1 | 1 | 1 | 2 | 1 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| RESTRICTED MAX: Minutes Per Hour | | | | | | | | | | | | | | | | | | |
| RESTRICTED MAX: Hours Per 8 hr. Shift | | | | | | | | | | | | | | | | | | |

FOR WORKERS' COMP QUESTIONS CALL 1-888-565-9675

FOLLOW-UP PLAN:
TX Duration 4 wk(s)
Next Visit 1/10/04 @ 9:30A
Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices): Released from CARE.

**Clinician Resource Code:**
OPAS / KPDS Example → J O D O E

Date Signed: Month Day Year

Circle affiliated Medical Center Area: BALDWIN PARK, BELLFLOWER, FONTANA, KERN COUNTY, LOS ANGELES, ORANGE COUNTY, PANORAMA CITY, RIVERSIDE, SAN DIEGO, SOUTH BAY, WEST LA, WOODLAND HILLS

Clinician Name (print)

OCCUPATIONAL MEDICINE

PART 1 of 3

PATIENT COPY - WITH DIAGNOSIS

12-20-04

KAISER PERMANENTE

# Documentation of Medical Impairment (DMI)

CONFIDENTIAL MEDICAL INFORMATION: This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

1080 85 25 M 11 54
SCOTT JAMES W

PATIENT COPY - WITH DIAGNOSIS PART 1 of 3

## 1. Patient Data

| | Month | Day | Year | |
|---|---|---|---|---|
| DATE OF THIS FORM / VISIT/DISCHARGE: | 12 | 20 | 2004 | Day 8 am - 5 pm / Evn 5 pm - 12 am / Night 12 am - 8 am |
| LAST DAY WORKED: | 12 | 17 | 2004 | Medical Release for Return to Work only, patient not treated for this impairment. |
| DATE OF INJURY / DATE ILLNESS BEGAN: | 03 | | 2004 | Telephone Consultation, patient not seen |
| DATE OF: Hospital Admit / Outpatient Surgery / EDC | | | 200 | |

121704
Medical Record Number (If KP card is not available)

2040 3081

© copyright 1997, Kaiser Permanente

## 2. Diagnosis or Reason for Impairment

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

| | | |
|---|---|---|
| Adverse Effect Environment 01 | FX: Humerus / Radius / Ulna / Hand / Finger(s) 02 | Sprain / Strain / Pain: Cervical / Thoracic / Neck 03 |
| Carpal Tunnel Syndrome 04 | Hernia (prior to surgery) 05 | Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) 06 |
| Contusions: excludes cerebral 07 | Internal Derangement of Knee (prior to scope) 08 | Sprain / Strain / Pain: LS / Low Back 09 |
| Eye Injury - Superficial: Corneal Abrasion / Foreign Body / Chemical Burn 10 | Lacerations / Wounds / Punctures 11 | Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) 12 |
| FX: Ankle / Foot excludes Toe(s) 13 | Radiculopathy (cervical-lumbar) / Sciatica 14 | Tendonitis / Synovitis / Bursitis / Shoulder Impingement 15 |

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3.

- DMI Code (DMI group list on fly sheet): D
- Diagnosis Code (ICD - see ECR)
- Procedure Code (CPT - see ECR)
- AND
- Written description for DX code above (2b): Sinusitis

OCCUPATIONAL MEDICINE

## 3. EMPLOYER INSTRUCTIONS

Patient may return to regular work without restrictions 1st day after total number of days in b. + c. If accommodations not available in restrictions, then patient to be considered disabled for total days in b. + c. SEE BACK OF FORM FOR MORE INFORMATION

Recommended Impact on Work:

a. RETURN TO WORK TODAY — Patient can return to work today, without restrictions

b. OFF WORK Homebound — Example → 0 2 1 — Patient completely unable to work (Homebound) for a period of ___ Calendar Day(s) STARTING WITH Month ___ Day ___ Year 200___

c. ACTIVITY RESTRICTIONS — Example → 0 0 0 — Patient can return to work with restriction(s) as noted in Section 4 for a period of ___ Calendar Day(s) STARTING AFTER 36 OR WITH Month ___ Day ___ Year 200___

d. PERMANENT CONDITION — Patient has reached maximum medical improvement. Restriction(s) listed are permanent. / Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.)

## 4. Restriction(s)

Unmarked Box = No Restrictions check "Comments"

Cannot Perform

MAX: Minutes Per Hour

MAX: Hours Per 8 hr. Shift

FOR WORKERS' COMP QUESTIONS CALL 1-888-668-8878

FOLLOW-UP PLAN

TX Duration ___

Next Visit ___

Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices):

Released from CARE.

OPAS / APDS Example → 0 0 0 5

Date Signed: Month 12 Day 20 Year 2004

Circle affiliated Medical Center Area

Clinician Name (print)

3-8088 (04)

1-03-05

James W. Scott Jr.
01/03/2005 10:58 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Re: ALERT-504 and ALERT-503

What type of training is this ?

*************************************

PLease note my new E-Mail address below and make changes to your records to reflect this. The GSA E-mail address will stop working in the near future.

James.W.Scott@dhs.gov

**John P. Morgan**
12/28/2004 10:30 AM

To: david.skultety@gsa.gov, James W. Scott Jr./9PSL/R09/GSA/GOV@GSA
cc: Donald F. Meyerhoff/9PSF/R09/GSA/GOV@GSA, Jeffrey C. Kang/9PSF/R09/GSA/GOV@GSA
bcc:
Subject: Re: ALERT-504 and ALERT-503

Dave and Bill:

As you can see, the rotations have begun again. I suggest you plan your schedules accordingly. It is my intention to have 100% CI completion, including me, before the end of 2005. I have been informed by the CI's and others that have attended that it is quite good. I look forward to attending as well. Thanks.

JP

----- Forwarded by John P. Morgan/9PSF/R09/GSA/GOV on 12/28/2004 10:44 AM -----

**Jeffrey C. Kang**
12/21/2004 12:31 PM

To:FPS-FLETC Training@GSAcc:Pamela A. Bauchman/PS/CO/GSA/GOV@GSA, Kevin J. Charron/PS/CO/GSA/GOV@GSA, Russell S. Oase/9PS/R09/GSA/GOV@GSA, Donald F. Meyerhoff/9PSF/R09/GSA/GOV@GSA, Bruce T. Hori/9PSF/R09/GSA/GOV@GSA, (bcc: John P. Morgan/9PSF/R09/GSA/GOV)Subject:Re: ALERT-504 and ALERT-503_

Pam;

Please add James W. Scott and Jesse Lomeli to the roster for the FPS ALERT 504 class a FLETC Program Request Roster with their student information is attached below.

1-12-05

**John P. Morgan**
01/12/2005 02:33 PM

To: Ruth.Mobley@GSA.GOV
cc:
Subject: Medical Appointments

Ruth: I am forwarding for your records. JP

Please do not use the GSA address any longer, but utilize my new address of: john.morgan@dhs.gov.
Thanks.
----- Forwarded by John P. Morgan/9PSF/R09/GSA/GOV on 01/12/2005 02:53 PM -----

**James W. Scott Jr.**
01/05/2005 01:46 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Medical Appointments

I have a work-related Physical Therapy appointment at 7:30am tomorrow, as well as a 2:30pm Dental Appointment in the afternoon. I will Fax the Dental's S/L slip later.

1-10-05

James W. Scott Jr.
01/10/2005 08:11 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Medical Appointment

I have a work-related medical appointment at 9:30am this morning regarding the computer-related upper arm/shoulder injury. I will FAX you the S/L slip later today.

1-10-05

James W. Scott Jr.
01/10/2005 08:23 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Training Cofirmation

It is my understanding that from 1-30-05 thru 2-4-05, I will be sent to Los Angeles to attend "VIP Protection Training".

And from 2-6-05 thru 2-19-05, I will sent the East Coast to attend FPS Advanced Agent/Officer Training.

Please confirm this with me at your earliest convenience....Thanks....

1-10-05

KAISER PERMANENTE

# Documentation of Medical Impairment (DMI)

[redacted] [redacted]

1080 85 25 M 11 54
SCOTT JAMES W

**CONFIDENTIAL MEDICAL INFORMATION:** This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

## 1. Patient Data:

| | Month | Day | Year | Day (8 am - 5 pm) | Evn (5 pm - 12 am) | Night (12 am - 8 am) |
|---|---|---|---|---|---|---|
| DATE OF THE FORM VISIT/DISCHARGE: | 01 | 10 | 2005 | ✓ 1 | 2 | 3 |

| EMPLOYEE STATES | Month | Day | Year | Medical Release for Return to Work only, patient not treated for this impairment. |
|---|---|---|---|---|
| LAST DAY WORKED: | 01 | 10 | 2005 | 1 |

| EMPLOYEE STATES | Month | Day | Year | Telephone Consultation, patient not seen |
|---|---|---|---|---|
| DATE OF INJURY / DATE ILLNESS BEGAN: | | | | 1 |

DATE OF: Hospital Admit / Outpatient Surgery / EDC — Month ___ Day ___ Year 200_

Medical Record Number (If KP card is not available)

2040 3081

© copyright 1997, Kaiser Permanente

## 2. Diagnosis or Reason for Impairment:

**a.** Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

| | | | | | |
|---|---|---|---|---|---|
| Adverse Effect Environment | 01 | FX: Humerus / Radius / Ulna / Hand / Finger(s) | 02 | Sprain / Strain / Pain: Cervical / Thoracic / Neck | 03 |
| Carpal Tunnel Syndrome | 04 | Hernia (prior to surgery) | 05 | Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) | 06 |
| Contusions: excludes cerebral | 07 | Internal Derangement of Knee (prior to scope) | 08 | Sprain / Strain / Pain: LS / Low Back | 09 |
| Eye Injury - Superficial: Corneal Abrasion / Foreign Body / Chemical Burn | 10 | Lacerations / Wounds / Punctures | 11 | Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) | 12 |
| FX: Ankle / Foot excludes Toe(s) | 13 | Radiculopathy (cervical-lumbar) / Sciatica | 14 | Tendonitis / Synovitis / Bursitis / Shoulder Impingement | ✓ 15 |

**b.** If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3.

DMI Code (DMI group list on fly sheet): D___
OR
Diagnosis Code (ICD - see ECR): ___.__
OR
Procedure Code (CPT - see ECR): ___
AND
Written description for DX code above (2b): [illegible]

**OCCUPATIONAL MEDICINE**

## 3. EMPLOYER INSTRUCTIONS

Patient may return to regular work with the restrictions listed below if available. If restrictions are not available, the patient is to be considered as disabled for that period. If the restrictions are not available, the patient should be placed on modified work. SEE BACK OF FORM FOR MORE INFORMATION.

**Recommended Impact on Work:**

**a. RETURN TO WORK TODAY**
✓ 1 Patient can return to work today, without restrictions

**b. OFF WORK** Homebound — Example → 0 2 1
1 Patient completely unable to work (Homebound) for a period of ___ Calendar Day(s)
STARTING WITH Month ___ Day ___ Year 200_

**c. ACTIVITY RESTRICTION(S)** Example → 0 0 0
1 Patient can return to work with restriction(s) as noted in Section 4 for a period of ___ Calendar Day(s)
STARTING AFTER 3b OR WITH Month ___ Day ___ Year 200_

**d. PERMANENT CONDITION**
1 Patient has reached maximum medical improvement. Restriction(s) listed are permanent.
2 Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.)

## 4. Restriction(s):

Unmarked Box = No Restrictions check "Comments"

| | Bending | Climbing | Computer | Driving | Grasping L | Grasping R | Hand Motion L | Hand Motion R | Kneeling | Push/Pulling L | Push/Pulling R | Reaching Above Shoulder L | Reaching Above Shoulder R | Sitting | Squatting | Standing | Twisting | Walking | Lifting | NO LIFTING OVER ___ Pounds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cannot Perform | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| RESTRICTED MAX: Minutes Per Hour | | | | | | | | | | | | | | | | | | | | |
| RESTRICTED MAX: Hours Per 8 hr. Shift | | | | | | | | | | | | | | | | | | | | |

FOR WORKERS' COMP QUESTIONS CALL 1-888-565-9675

PART 1 of 3

**FOLLOW-UP PLAN:**

TX Duration 4 wk(s)

Next Visit 02/07/05 @ 8:45 AM

Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices): Released from CARE.
ERG EVAL - IMPAIRMENT RECS

## Clinician Resource Code:

OPAS / KPDS Example → J 0 D 0 E

N A N T H

Date Signed: Month 01 Day 10 Year 2005

Circle affiliated Medical Center Area: BALDWIN PARK / BELLFLOWER / FONTANA / KERN COUNTY / LOS ANGELES / ORANGE COUNTY / PANORAMA CITY / RIVERSIDE / SAN DIEGO / SOUTH BAY / WEST LA / WOODLAND HILLS

Clinician Name (print) T. NAM MD

PATIENT COPY - WITH DIAGNOSIS

1-12-05

James W. Scott Jr.
01/12/2005 12:18 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Medical Appointment

I have a work-related Physical Therapy appointment tomorrow at 1:30pm and will FAX the S/L slip later today.

1-13-05

**James W. Scott Jr.**
01/13/2005 07:09 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: re: Physical Therapy

See Attached....

1-13-05

# REQUEST FOR LEAVE OR APPROVED ABSENCE

71-113

| 1. NAME (Last, First, Middle Initial) | 2. EMPLOYEE OR SOCIAL SECURITY NUMBER |
|---|---|
| Scott, James W. | |

3. ORGANIZATION DHS/BTS/ICE/FPS

| 4. TYPE OF LEAVE/ABSENCE (Check appropriate box(es) below) | DATE From: | DATE To: | TIME From: | TIME To: | TOTAL HOURS |
|---|---|---|---|---|---|
| ☐ Accrued Annual Leave | | | | | |
| ☐ Restored Annual Leave | | | | | |
| ☐ Advanced Annual Leave | | | | | |
| ☐ Accrued Sick Leave | | | | | |
| ☐ Advanced Sick Leave | | | | | |
| Purpose: ☒ Medical/dental/optical examination of requesting employee ☐ Other<br>☐ Care of family member/bereavement, including medical/dental/optical examination of family member | | | | | |
| ☐ Compensatory Time Off | | | | | |
| ☒ Other Paid Absence (Specify in Remarks) | 1-13-05 | 1-13-05 | 1300 | 1400 | 1 Hr. |
| ☐ Leave Without Pay | | | | | |

5. FAMILY AND MEDICAL LEAVE

If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993, please provide the following information:

☐ I hereby invoke my entitlement to Family and Medical Leave for:

☐ Birth/Adoption/Foster Care

☐ Serious Health Condition of Spouse, Son, Daughter, or Parent

☐ Serious Health Condition of Self

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the Family and Medical Leave Act of 1993.

6. REMARKS Work-Related Physical Therapy Appointment

7. CERTIFICATION: I hereby request leave/approved absence from duty as indicated above and certify that such leave/absence is requested for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

EMPLOYEE SIGNATURE [signature] DATE 1-13-05

8. OFFICIAL ACTION ON REQUEST: ☐ APPROVED ☐ DISAPPROVED

*(If disapproved, give reason. If annual leave, initiate action to reschedule.)*

SIGNATURE DATE

**PRIVACY ACT STATEMENT**

Section 6311 of Title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Where the employee identification number is your Social Security Number, collection of this information is authorized by Executive Order 9397. Furnishing the information on this form, including your Social Security Number, is voluntary, but failure to do so may result in disapproval of this request.

If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

NSN 7540-00-753-5067
Previous edition may be used

STANDARD FORM 71 (REV. 12-97)
Prescribed by OFFICE OF PERSONNEL MANAGEMENT, 5 CFR Part 630

1-18-05

James W. Scott Jr.
01/18/2005 03:44 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Medical Appointment

I have a work-related Physical Therapy appointment tomorrow at 9:30am & will FAX you the S/L slip tomorrow.

1-24-05

James W. Scott Jr.
01/24/2005 01:09 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: Medical Appointment

I have a Medical Appointment at 11am tomorrow and will FAX you the S/L slip later today.

1-26-05

**James W. Scott Jr.**
01/26/2005 08:18 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Medical Appointments

A. I have a medical appointment at 1:30pm today, which was booked this morning. Though I need to consult with the Kasier medical staff further, the need for medical care may indeed be connected with a previously addressed work-related issue.

B. I have a work-related medical appointment tomorrow at 3:45pm tomorrow regarding the upper arm/shoulder injury.

I will submit the S/L slips later today.

1-27-05

James W. Scott Jr.
01/27/2005 01:43 PM

To: Maria J. Juarbe/9PSS/R09/GSA/GOV
cc: John P. Morgan/9PSF/R09/GSA/GOV
Subject: Travel Authorization

Thanks for your help on the Travel Voucher yesterday, even though we couldn't make it work. I left several messages for Terry Simmons, but she returned the call during a work-related medical appointment I had earlier today. Her message advised that there could be "a glitch" in the program, and that doing a manual voucher may be the only current way to submit one. Anyway, I've left another message for her, and hopefully she'll call back before a scheduled work-related MRI I have later this afternoon.

1-27-05

**James W. Scott Jr.**
01/27/2005 01:23 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: re: Student Information Packet for ALERT-504

Based on the below attached course requirements forwarded to me yesterday, I was able to obtain a follow-up medical appointment with Kaiser Permanente Occupational Medicine Dr. Wang (the attending physician) at 12 noon today, and review the specifics of these requirements with him. Previously, Dr. Wang's impression of the training course requirements was based on my contacting other agents who had either attended it, or had spoken with others who had themselves. In brief, I was advised that the course consisted of a FLETC refresher on driving, firearms, and defensive tactics. Dr. Wang had exhibited some concern over the defensive tactics portion, but I asked him to let me try it in order to test the status of the injured upper arm and shoulder. There was a secondary concern that I had lost significant upper body strength since the injury occurred last September, due to the fact that "general" upper body weight training had been forbidden until about a week ago, and now was only allowed according to strict guidelines from their physical therapists (low weight...high reps if possible). Additionally, an MRI had been prescheduled for late this afternoon, but the results would not come back for several weeks.

In short, the attached course requirements were a "too much-too soon" type of situation, so he has issued me a Documet of Medical Impairment (DMI) restricting me to "lifting no more than 20 lbs" (the current maximum weight used in my daily routine). This DMI will be Fed-X'd to you later today.

Assuming that the MRI goes OK, and upper body strength improves through both their resistance and weight training progam, I probably won't do bad a for a "50 year old cop" when a later course date comes around.

*************************************************************************

PLease note my new E-Mail address below and make changes to your records to reflect this. The GSA E-mail address will stop working in the near future.

James.W.Scott@dhs.gov

**James W. Scott Jr.**
01/26/2005 09:25 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
bcc: Ruben Ballestros/9PSL/R09/GSA/GOV
Subject: re: Student Information Packet for ALERT-504

Having been given "no previous knowledge" of the "extensive physical requirements" needed to successfully complete what appears to be a "2-week Physical Fitness Evaluation and Skills course" until today (i.e., little more than 1 week prior to attendance), the Kaiser Permanente Dept. of Occupational Medicine (who you are aware is currently treating me for a work-related Upper Body Injury) have also not been afforded an opportunity to review these previously unpublished requirements as well. With that in mind, I will FAX a copy to the attending physician and request his input as soon as possible.

*****************************************************************
*****************************************************************
******************

PLease note my new E-Mail address below and make changes to your records to reflect this. The GSA E-mail address will stop working in the near future.

James.W.Scott@dhs.gov

**FPS-FLETC Training**
Sent by: Pamela A. Bauchman
01/26/2005 01:10 PM EST

To: Henry J. Acker Jr./2PSMU/R02/GSA/GOV@GSA, Paul J. Moylett/2PSMU/R02/GSA/GOV@GSA, Dennis R. Gibson/2PSM/R02/GSA/GOV@GSA, Rogelio E. Amantine/2PSC/R02/GSA/GOV@GSA, Luis R. Sanchez/2PSC/R02/GSA/GOV@GSA, Charles I. Colley/2PSU/R02/GSA/GOV@GSA, Michael R. Wilcoxon/4PSO-MJ/R04/GSA/GOV@GSA, Samuel Shepeard/4PSO-AZ/R04/GSA/GOV@GSA, Ernest O. Lindsey/4PSO-AZ/R04/GSA/GOV@GSA, Arthur D. Willhite/5PS/R05/GSA/GOV@GSA, Charles W. Kirk/5PS-2I/R05/GSA/GOV@GSA, Mark A. Lambert/5PS-2D/R05/GSA/GOV@GSA, David L. Wright/6PSW/R06/GSA/GOV@GSA, John M. Nauman/6P/R06/GSA/GOV@GSA, Dominic Lopez/7P/R07/GSA/GOV@GSA, Timothy G. Wideman/7P/R07/GSA/GOV@GSA, Carlos A. Guardiola/7P/R07/GSA/GOV@GSA, David J. Smith/8P/R08/GSA/GOV@GSA, Jesse A. Lomeli/9PSL/R09/GSA/GOV@GSA, James W. Scott Jr./9PSL/R09/GSA/GOV@GSA, Benjamin H. Curtis/WPS/RW/GSA/GOV@GSA, bdhudnal@fins3.dhs.gov
cc: Cheryl J. Lee/2PSS/R02/GSA/GOV@GSA, Jon E. Lepley/5PS/R05/GSA/GOV@GSA, Jefrey M. Warner/PSOT/CO/GSA/GOV@GSA, rene.valero@dhs.gov@GSA, Jeffrey C. Kang/9PSF/R09/GSA/GOV@GSA, Paul Dowd Jr./1PS/R01/GSA/GOV@GSA, Martha P. Smith/4PSO-GL/R04/GSA/GOV@GSA, Michael J. Brown/10P/R10/GSA/GOV@GSA, John E.

Gill/10P/R10/GSA/GOV@GSA, Robert W. Davis/7P/R07/GSA/GOV@GSA, Bernard W. Napier/6PSW/R06/GSA/GOV@GSA, Eddie W. Lane/4PS/R04/GSA/GOV@GSA, Craig Blango/3P/R03/GSA/GOV@GSA, Steven W. Johnson/5PS-3D/R05/GSA/GOV@GSA, David.Powderly@dhs.gov, Cleveland W. Feemster/4PS/R04/GSA/GOV@GSA
bcc:
Subject: Student Information Packet for ALERT-504

[IMAGE]

Please find attached the Student Information Letter regarding the ALERT-504 class beginning February 7th, 2005.

Also attached, is the Practical Exercise Performance Requirements (PEPRs) for your review. PEPR's are physical activities related to law enforcement tasks, e.g. conducting searches and making arrests. Students must satisfactorily perform these requirements to successfully complete the training program. This is a rigorous program containing advanced training in the areas of arrest techniques, defensive tactics and firearms designed to emulate the physical stresses of the field. Therefore, it is the FPS National Academy's expectation that all attendees have a baseline fitness level required for FPS law enforcement positions. Please complete the form and fax it to Pam Bauchman at the National Academy at (912) 267-3330 by close of business Thursday, February 3rd, 2005. In addition, those of you requiring transportation from the airports, please notify the FLETC Transportation Office for scheduling. Their phone number is (912) 267-2458.

**T-shirts will be ordered, so please e-mail your T-shirt size to pamela.bauchman@dhs.gov as soon as possible.** If you have additional questions, please contact SSA, Charlie Moore at the

National Training Academy at 912-267-2831.

[IMAGE]
Gary L. Beard
Division Director, FPS National Academy
Federal Law Enforcement Training Center
(912)267-2831
gary.beard@dhs.gov

ALERT 504 Student Information Letter.( ALERT PEPRs.xls

1-27-05

**John P. Morgan**
01/27/2005 12:07 PM

To: James W. Scott Jr./9PSL/R09/GSA/GOV
cc: Donald F. Meyerhoff/9PSF/R09/GSA/GOV
cc: John P. Morgan/9PSF/R09/GSA/GOV
Subject: Re: CI Office Space Construction

Bill:

Refresh my memory. When did I authorize you to go back to your office space in the Federal Building. I believe we communicated once when you stated the space was being completed, but we made no determination as to when you would return. I assumed you were still working out of your residence as well as the JTTF Office. I thought I made it clear months ago, that you were to keep me informed of conditions in your work areas and where you conduct business. I have continued to try my best to be attentive to your environment as well as your medical conditions.

If you can't be available with the key, please make arrangements for someone to assist the construction workers.

Also, I am concerned about your previous e-mail in which you were surprised at the course curriculum for the Alert training. I know Ruben gave you insight as to the course requirements. What were your assumptions? As you know, we as Agents are mandated for periodic refresher training. If you are unable to attend due to a physical condition then we must determine, as well, whether you are fit to perform the full range of your duties in your present capacity. I would like a confirmation from your physician no later than this Friday, close of business, whether he feels you can attend and also a statement or his clinical evaluation of your present condition.

JP

Please do not use the GSA address any longer, but utilize my new address of: john.morgan@dhs.gov.
Thanks.
James W. Scott Jr.

**James W. Scott Jr.**
01/27/2005 10:22 AM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: CI Office Space Construction

As you are aware, on 1-24-05, Federal Building Contractors began a construction project that would finally connect the FPS San Diego CI Office Space and adjacent storage room to the rest of the Federal Building's Heating and Air Condition System (bearing in mind that I was moved into this space back in April 03'). Based on the poor air quality and construction-related contaminates nearby, I filed a Workers Compensation Claim for a long-term Upper Respiratory Infection which was reluctant to heal. Eventually, after all construction was concluded in the area, and my space was thoroughly cleaned by the construction staff, I again began to intermitently use the space for my increasing number of non-JTTF duties (occasionally proping the door open for fresh air as needed).

Getting back to 1-24-05, when the contractors began to cut into the ceiling area of the FPS Storage Room, "surprisingly" the area quickly began to fill with a cloud of the previous project's construction dusk that had been trapped above the ceiling (resembling a smoke bomb being set off). Since I was only needed to stand-by in the immedate area as an escort to their presence in FPS controlled areas, I tried to remain at a distance as this was occurring. However, the following evening, I began to quickly develop another Upper Respiratory Infection (resulting in a trip to Kaiser Primary Care, another prescription decongestant and antibiotic, and my reported Sick Leave from work today).

Due to some reported errors made during construction, the contrators have advised of their need to again access both my office space and the storage room tomorrow at 9am. Obviously, if I'm back to work

by then, I "will not" be serving as their escort again....but whoever does will need my office key.
*Note: I'll file another DOL/OWCP Claim later this month.

1-27-05

James W. Scott Jr.
01/27/2005 06:17 PM

To: John P. Morgan/9PSF/R09/GSA/GOV
cc:
Subject: Document of Medical Impairment-DMI (Confidental Medical Information)

Attached you will find a copy of the DMI completed today by the Kaiser Permanete Dept. of Occupational Medicine (another copy has been Fed-X'd to you as well).

Please notify me "as soon as possible" on Friday concerning the decision on my attendance at the FLETC Alert 504 class.
*Note: I have to submit a document to DHS Legal and the U.S. Court of Appeals of the Federal Circuit on Friday based on your decision.

1-27-05

NO LIFTING OVER 20 LBS. 'NO RESTRAINTS'??? TENDONITIS, SYNOVITIS, BURSITIS, SHOULDER IMPINGEMENT. NEXT DR. VISIT 2/22/05

Laguna Niguel HR
Lillian
Jane Moran
949-360-3055
Benefits!
Nina (FHS) 3063
* HQ/DC
Katherine Figueroa
202-501-1385

KAISER PERMANENTE

**Documentation of Medical Impairment (DMI)**

CONFIDENTIAL MEDICAL INFORMATION: This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

1080 85 25 M 11 54
SCOTT JAMES W
012105

**1. Patient Data:**

| | Month | Day | Year | |
|---|---|---|---|---|
| DATE OF THE FORM/VISIT/DISCHARGE | 01 | 27 | 2005 | Day / Eve / Night |
| EMPLOYEE STATES: LAST DAY WORKED | 01 | 26 | 2005 | Medical Release for Return to Work only, patient not treated for this impairment |
| EMPLOYEE STATES: DATE OF INJURY / DATE ILLNESS BEGAN | 09 | | 2004 | Telephone Consultation, patient not seen |
| DATE OF: Hospital Admit / Outpatient Surgery / EDC | | | 200 | |

Medical Record Number (If KP card is not available)

2040 3081

© copyright 1997, Kaiser Permanente

**2. Diagnosis or Reason for Impairment:**

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

Adverse Effect Environment 01; FX: Humerus / Radius / Ulna / Hand / Finger(s) 02; Sprain / Strain / Pain: Cervical, Thoracic / Neck 03; Carpal Tunnel Syndrome 04; Hernia (prior to surgery) 05; Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) 06; Contusions: excludes cerebral 07; Internal Derangement of Knee (prior to scope) 08; Sprain / Strain / Pain: LS / Low Back 09; 1st Injury - Superficial: Corneal Abrasions / Foreign Body / Chemical Burn 10; Lacerations / Wounds, Punctures 11; Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) 12; FX: Ankle / Foot, excludes Toe(s) 13; Radiculopathy (cervical-lumbar) / Sciatica 14; Tendonitis / Synovitis / Bursitis / Shoulder Impingement 15 [marked]

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3.

DMI Code (DMI group list on fly sheet): D
Diagnosis Code (ICD - see ECR)
Procedure Code (CPT - see ECR)
Written description for DX code above (2b)

OCCUPATIONAL MEDICINE

**3. EMPLOYER INSTRUCTIONS Recommended Impact on Work:**

a. RETURN TO WORK TODAY — Patient can return to work today, without restrictions

b. OFF WORK Homebound — Example → 0211 — Patient completely unable to work (Homebound) for a period of ___ Calendar Day(s) STARTING WITH Month / Day / Year 200_

c. ACTIVITY RESTRICTIONS — Example → 000 — [marked] Patient can return to work with restriction(s) as noted in Section 4 for a period of 025 Calendar Day(s) STARTING AFTER 24 OR WITH Month 01 Day 27 Year 2005

d. PERMANENT CONDITION — Patient has reached maximum medical improvement. Restriction(s) listed are permanent. / Patient is permanently, totally disabled (i.e. anticipate he/she will never return to any work.)

**4. Restriction(s):** Unmarked Box = No Restrictions, check "Comments"

Bending, Climbing, Computer, Driving, Grasping L R, Hand Motion L R, Kneeling, Pulling / Pushing L R, Reaching Above Shoulder L R, Sitting, Squatting, Standing, Twisting, Walking, Lifting L R

Cannot Perform / RESTRICTED: MAX: Minutes Per Hour / MAX: Hours Per 8 hr. Shift

NO LIFTING OVER 020 Pounds

FOR WORKERS' COMP QUESTIONS CALL 1-888-565-9675

FOLLOW-UP PLAN:
TX Duration 4 wk(s)
Next Visit 2/22/05 Tuesday at 8:15 AM
Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices): no restraints
Released from CARE.

**Clinician Resource Code:** OPAS / KPSS Example → 000E — WANTH

Date Signed: Month 01 Day 27 Year 2005

Circle affiliated Medical Center Area

Clinician Name (print)
Clinician Signature

NS-8068 (1/04)

PATIENT COPY - WITH DIAGNOSIS PART 1 of 3

DMI [illegible]

KAISER PERMANENTE

## Documentation of Medical Impairment (DMI)

CONFIDENTIAL MEDICAL INFORMATION: This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

1080 85 25 M 11 54
SCOTT JAMES M

012705

PATIENT COPY - WITH DIAGNOSIS PART 1 of 3

**1. Patient Data:**

| | Month | Day | Year | |
|---|---|---|---|---|
| DATE OF THE FORM VISIT/DISCHARGE: | 01 | 27 | 2005 | Day 8 am - 4 pm / Eve 4 pm - 12 am / Night 12 am - 8 am |
| EMPLOYEE STATES LAST DAY WORKED: | 01 | 26 | 2005 | Medical Release for Return to Work only, patient not treated for this impairment. |
| EMPLOYEE STATES DATE OF INJURY / DATE ILLNESS BEGAN: | 01 | | 2004 | Telephone Consultation, patient not seen |
| DATE OF: Hospital Admit / Outpatient Surgery / EDC | | | 200 | |

Medical Record Number (If KP card is not available)

2040 3081

© copyright 1997, Kaiser Permanente

**2. Diagnosis or Reason for Impairment:**

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

- Adverse Effect Environment 01
- FX: Humerus / Radius / Ulna / Hand / Finger(s) 02
- Sprain / Strain / Pain: Cervical / Thoracic / Neck 03
- Carpal Tunnel Syndrome 04
- Hernia (prior to surgery) 05
- Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) 06
- Contusions: excludes cerebral 07
- Internal Derangement of Knee (prior to scope) 08
- Sprain / Strain / Pain: LS / Low Back 09
- Eye Injury - Superficial Corneal Abrasion / Foreign Body / Conjunctivitis 10
- Lacerations / Wounds / Punctures 11
- Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) 12
- FX: Ankle / Foot, excludes Toe(s) 13
- Radiculopathy (cervical-lumbar) / Sciatica 14
- Tendonitis / Synovitis / Bursitis / Shoulder Impingement 15 [marked]

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3.

DMI Code (DMI group list on fly sheet): D

Diagnosis Code (ICD - see ECR) OR

Procedure Code (CPT - see ECR) AND

Written description for DX code above (2b)

OCCUPATIONAL MEDICINE

**3. EMPLOYER INSTRUCTIONS**

Recommended Impact on Work:

a. RETURN TO WORK TODAY — Patient can return to work today, without restrictions

b. OFF WORK Homebound — Example → 0 2 1 — Patient completely unable to work (Homebound) for a period of ___ Calendar Day(s) STARTING WITH Month / Day / Year 200_

c. ACTIVITY RESTRICTIONS Example → 0 0 0 — Patient can return to work with restriction(s) as noted in Section 4 for a period of 032 Calendar Day(s) STARTING AFTER or ON WITH Month 01 Day 27 Year 2005

d. PERMANENT CONDITION — Patient has reached maximum medical improvement. Restriction(s) listed are permanent. / Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.)

**4. Restriction(s):** Unmarked Box = No Restriction check "Comments"

Bending, Climbing, Computer, Driving, Grasping L R, Hand Motion L R, Kneeling, Push / Pull L R, Reaching Above Shoulder L R, Sitting, Squatting, Standing, Twisting, Walking, Lifting, No Lifting Over __ Pounds

Cannot Perform / RESTRICTED: MAX: Minutes Per Hour / MAX: Hours Per 8 hr. Shift

FOR WORKERS' COMP QUESTIONS CALL 1-888-565-9675

FOLLOW-UP PLAN:

TX Duration 4 wk(s)

Next Visit 2/22/05

Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices): Released from CARE. No restrictions

Tuesday at 8:15 AM

Clinician Resource Code: OPAS / EPBS Example → J 0 D 0 E — TJAUTH

Date Signed: Month 01 Day 27 Year 2005

Circle affiliated Medical Center Area

Clinician Name (print)

Clinician Signature

NQ-8868 (1/04)

1-31-05

On Monday, January 31, 2005, I informed Special Agent James W. Scott Jr., as directed by Donald F. Meyerhoff, Chief, Threat Management Branch, that due to his documented medical condition he would not be attending the VIP Training in Los Angeles nor would he be attending the two (2) week ALERT scheduled for the following week. I informed him that due to the latest submission of the DMI (Document of Medical Impairment) supplied by his physician, in which restrictions were noted, to allow him to participate in physical training activity might have serious consequences for his personal well being and jeopardy toward the agency. I further explained that it would be gross negligence on the governments part to knowingly allow him to participate when it might impact on his therapy and recovery.have serious consequences to him as well as the government. I then informed him to return to San Diego immediately, secure his weapon and park his government vehicle until such time as Chief Meyerhoff determined the next course of action.

Chief Meyerhoff informed me that he would be managing Agent Scott until such time as he completed his medical clearance and possible return to full duty status.

2-2-05

James W. Scott Jr.
02/02/2005 09:30 AM

To: Ruben Ballestros/9PSL/R09/GSA/GOV
cc: John P. Morgan/9PSF/R09/GSA/GOV
Subject: FPS Cases & JTTF

At the time I was relieved of my Law Enforcement position on Monday, I currently had (3) open FPS Criminal Investigations. Since I no longer have the legal authority to proceed with these, I will O/V the case files to you later today and we can speak further about them over the phone.

Additionally, I have also notified my FBI/JTTF supervisor that I have been relieved of my Law Enforcement position, also advising that you are the closest FPS point of contact concerning SoCal Border Area FPS matters.

U.S. Department of Homeland Security
Investigations and Criminal Enforcement
Federal Protective Service

880 Front Street, Room B222
San Diego, California 92101

# FAX COVER SHEET

JP MORGAN

From: R. BUCHANAN 415 50
436-7367

TO: D. HANDSCHIN

FAX #: ~~602-379-4678~~ 602-514-7792

DATE: 2-7-05

PAGES: 5 (including cover sheet)

Confidentiality Statement

The information contained in this facsimile transmission is privileged and confidential and is intended only for the use of the recipient listed above. If you are neither the intended recipient or the employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone (619-557-2913) to arrange for the return of the transmitted documents to us or to verify their destruction.

THIS WAS SENT LAST SEPT (28). WE HAD TONS OF MAIL THAT DIDN'T GET TO US UNTIL A SHORT TIME AGO.

02/07/2005 15:10 6025147792 DHS SAC ADMIN PAGE 02/05
Feb 07 2005 11:34 619-557-2915 p.2

# Attending Physician's Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Patient's name Last First Middle | 2. Date of Injury | 3. OWCP File Number | OMB No. 1215-0103 Expires 08-31-02 |
|---|---|---|---|
| Scott James W | 09/08/2004 | | |

4. What history of injury (including disease) did patient give you?
Patient states, "Computer related repetative stress injury (right arm, shoulder and (continued on page 2)

5. Is there any history or evidence of concurrent or pre-existing injury or disease or physical impairment? (If yes, please describe)
◯ Yes ◯ No
ICD-9 Code

6. What are your findings? (Include results of X-rays, laboratory reports, etc.)
Vital Signs: Blood pressure 115/80, temperature 97.0, pulse 81, weight (continued on page 2)

7. What is your diagnosis?
Right rotator cuff tendonitis/subacromial bursitis.
ICD-9 Code: 726.10

8. Do you believe the condition found was caused or aggravated by an employment activity? (Please explain answer)
◯ Yes ◯ No

| 9. Did injury require hospitalization? If no, go to item #13 | 10. Date of admission | 11. Date of discharge | 12. Additional Hospitalization required? If yes, describe in "Remarks" (Item 25) |
|---|---|---|---|
| ◯ Yes ● No | 00/00/0000 | 00/00/0000 | ◯ Yes ◯ No |

13. What treatment did you provide?
Subacromial injection done in office. Rx: Motrin 800 mg, t.i.d., p.r.n. Ice, rest, sling right arm times three days. Gentle range of motion exercises. Referred to Occupational Medicine.

| 14. Date of first examination | 15. Date(s) of treatment | | | 16. Date of discharge from treatment |
|---|---|---|---|---|
| 09/17/2004 | 00/00/0000 | 00/00/0000 | 00/00/0000 | 00/00/0000 |

| 17. Period of total disability | 18. Period of partial disability | 19. Date employee able to resume light work |
|---|---|---|
| From 00/00/0000 Thru 00/00/0000 | From 09/17/2004 Thru 09/23/2004 | 09/17/2004 |

| 20. Date employee is able to resume regular work | 21. Has employee been advised that he/she can return to work? | 22. If yes, on what date was he/she advised? |
|---|---|---|
| 00/00/0000 | ● Yes ◯ No | 09/17/2004 |

| 23. If employee is able to resume only light work, indicate the extent of physical limitations and the type of work that could reasonably be performed with these limitations. (Continue in item #25 if necessary.) | 24. Are any permanent effects expected as a result of this injury? If yes, describe in item #25. |
|---|---|
| See item #25. | ◯ Yes ◯ No |

25. Remarks
The patient is released to return to modified duty with the following restrictions on 09/17/2004 through 09/23/2004: No use right hand, arm. Sling.

26. If you have referred the employee to another physician provide the following:
Name Thomas Wang, MD
Address 4647 Zion Avenue
City San Diego State CA Zip 92120
Specialty: Occupational Medicine

27. What is the reason for this referral?
◯ Consultation ● Treatment

I certify that the statements in response to the questions asked above are true, complete and correct to the best of my knowledge. Further I understand that any false or misleading statement or any misrepresentation or concealment of material fact which is knowingly made may subject me to felony criminal prosecution.

Signature of Physician: See Attached Signature Date: 09/27/2004

28. Name and address of physician
Christina M. Bui, DO
Address 4647 Zion Avenue
City San Diego, CA, 92120 State Zip

30. Tax ID Number 95-1750445
31. Do you specialize? ● Yes ◯ No
32. If yes, indicate your specialty: Family Medicine

Form CA-20
Rev. Nov.1999

**Attending Physician's Report**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

Page 2

| PATIENT NAME | PATIENT SSN | OWCP File Number | DATE OF INJURY | MEDICAL RECORD NO |
|---|---|---|---|---|
| Scott, James W | | | 09/08/2004 | 00 001080-85-25 |

BOX 4:
Patient states, "Computer related repetative stress injury (right arm, shoulder and neck.)"

Chief Complaint: Right shoulder pain.

Right shoulder /arm pain times > one week. Negative trauma. Positive repetitive motion. Sore relief with Motrin.

Medication:
Allergies: Septra.

BOX 6:
Vital Signs: Blood pressure 115/90, temperature 97.0, pulse 81, weight 198.
No swelling. No erythema. Positive tenderness to palpation anterior + lateral shoulder joint. Strength +5/5. Positive pain with weakness rotator cuff testing.

Doctor: Christina M. Bui, DO Date: 09/27/2004
See Page 1 for Signature

2-22-05

KAISER PERMANENTE

## Documentation of Medical Impairment (DMI)

1080 85 25 M 11 54
SCOTT JAMES W

CONFIDENTIAL MEDICAL INFORMATION: This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

PATIENT COPY - WITH DIAGNOSIS PART 1 of 3

**1. Patient Data:**

DATE OF THE FORM/VISIT/DISCHARGE: Month 02 Day 22 Year 2005 — Day (8 am - 5 pm) / Evn (5 pm - 12 am) / Night (12 am - 8 am)

EMPLOYEE STATES LAST DAY WORKED: Month 02 Day 22 Year 2005 — Medical Release for Return to Work only, patient not treated for this impairment.

EMPLOYEE STATES DATE OF INJURY / DATE ILLNESS BEGAN: Month 09 Year 2004 — Telephone Consultation, patient not seen

DATE OF: Hospital Admit / Outpatient Surgery / EDC — Month Day Year 200

022205
Medical Record Number (If KP card is not available)

2040 3081

© copyright 1997, Kaiser Permanente

**2. Diagnosis or Reason for Impairment:**

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

| | | |
|---|---|---|
| Adverse Effect Environment 01 | FX: Humerus / Radius / Ulna / Hand / Finger(s) 02 | Sprain / Strain / Pain: Cervical / Thoracic / Neck 03 |
| Carpal Tunnel Syndrome 04 | Hernia (prior to surgery) 05 | Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) 06 |
| Contusions: excludes cerebral 07 | Internal Derangement of Knee (prior to scope) 08 | Sprain / Strain / Pain: LS / Low Back 09 |
| Eye Injury - Superficial: Corneal Abrasion / Foreign Body / Chemical Burn 10 | Lacerations / Wounds / Punctures 11 | Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) 12 |
| FX: Ankle / Foot excludes Toe(s) 13 | Radiculopathy (cervical-lumbar) / Sciatica 14 | Tendonitis / Synovitis / Bursitis / Shoulder Impingement 15 (marked) |

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3.

DMI Code (DMI group list on fly sheet): D
OR
Diagnosis Code (ICD - see ECR)
OR
Procedure Code (CPT - see ECR)
AND
Written description for DX code above (2b)

OCCUPATIONAL MEDICINE

**3. EMPLOYER INSTRUCTIONS** — Patient may return to regular work without restrictions 1st day after total number of days in b & c. If accommodations not available for restrictions then patient to be considered disabled for total days in b & c. SEE BACK OF FORM FOR MORE INFORMATION.

**Recommended Impact on Work:**

a. RETURN TO WORK TODAY — Patient can return to work today, without restrictions (marked)

b. OFF WORK Homebound — Example → 021 — Patient completely unable to work (Homebound) for a period of ___ Calendar Day(s) STARTING WITH Month Day Year 200

c. ACTIVITY RESTRICTION(S) — Example → 010 — Patient can return to work with restriction(s) as noted in Section 4 for a period of ___ Calendar Day(s) STARTING AFTER 3b OR WITH Month Day Year 200

d. PERMANENT CONDITION — 1 Patient has reached maximum medical improvement. Restriction(s) listed are permanent. 2 Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.)

**4. Restriction(s):** Unmarked Box = No Restrictions check "Comments"

| | Bending | Climbing | Computer | Driving | Grasping L | Grasping R | Hand Motion L | Hand Motion R | Kneeling | Push/Pulling | Reaching Above Shoulder L | Reaching Above Shoulder R | Sitting | Squatting | Standing | Twisting | Walking | Lifting L R | NO LIFTING OVER ___ Pounds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cannot Perform | | | | | | | | | | | | | | | | | | | |
| RESTRICTED MAX: Minutes Per Hour | | | | | | | | | | | | | | | | | | | |
| RESTRICTED MAX: Hours Per 8 hr. Shift | | | | | | | | | | | | | | | | | | | |

FOR WORKERS' COMP QUESTIONS CALL 1-888-565-9675

FOLLOW-UP PLAN:
TX Duration 4 wk(s)
Next Visit 3/21/05
Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices):
Released from CARE.

**Clinician Resource Code:**
OPAS / KPOS Example → J0B0E

Date Signed: Month Day Year 2005

Circle affiliated Medical Center Area: BALDWIN PARK, BELLFLOWER, FONTANA, KERN COUNTY, LOS ANGELES, ORANGE COUNTY, PANORAMA CITY, RIVERSIDE, SAN DIEGO, SOUTH BAY, WEST LA, WOODLAND HILLS

Clinician Name (print): T. Nguyen MD

2-22-05

KAISER PERMANENTE

# Documentation of Medical Impairment (DMI)

PATIENT COPY · WITH DIAGNOSIS PART 1 of 3

**CONFIDENTIAL MEDICAL INFORMATION:** This form contains confidential medical information which is only to be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

1080 85 25 M 11 54
SCOTT JAMES W

## 1. Patient Data

| | Month | Day | Year | |
|---|---|---|---|---|
| DATE OF THE FORM VISIT/DISCHARGE: | 02 | 22 | 2005 | Day 1 / Eve 2 / Night 3 |
| LAST DAY WORKED: | 02 | 22 | 2005 | Medical Release for Return to Work only, patient not treated for this impairment. 1 |
| DATE OF INJURY / DATE ILLNESS BEGAN: | 09 | | 2004 | Telephone Consultation, patient not seen 1 |
| DATE OF: Hospital Admit / Outpatient Surgery / EDC | | | 200 | |

022205
Medical Record Number (If KP card is not available)

2040 3081

© copyright 1997, Kaiser Permanente

## 2. Diagnosis or Reason for Impairment

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

| | | | | | |
|---|---|---|---|---|---|
| Adverse Effect Environment | 01 | FX: Humerus / Radius / Ulna / Hand / Finger(s) | 02 | Sprain / Strain / Pain: Cervical / Thoracic / Neck | 03 |
| Carpal Tunnel Syndrome | 04 | Hernia (prior to surgery) | 05 | Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) | 06 |
| Contusions: excludes cerebral | 07 | Internal Derangement of Knee (prior to scope) | 08 | Sprain / Strain / Pain: LS / Low Back | 09 |
| Eye Injury - Superficial Corneal Abrasion / Foreign Body / Chemical Burn | 10 | Lacerations / Wounds / Punctures | 11 | Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) | 12 |
| FX: Ankle / Foot excludes Toe(s) | 13 | Radiculopathy (cervical-lumbar) / Sciatica | 14 | Tendonitis / Synovitis / Bursitis / Shoulder Impingement | 15 (marked) |

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restriction(s) in Section 3.

DMI Code (DMI group list on fly sheet): D
Diagnosis Code (ICD - see ECR)
Procedure Code (CPT - see ECR)
AND
Written description for DX code above (2b)

OCCUPATIONAL MEDICINE

## 3. EMPLOYER INSTRUCTIONS

Recommended Impact on Work:

a. RETURN TO WORK TODAY — Patient can return to work today, without restrictions (1, marked)

b. OFF WORK Homebound — Example → 021 — Patient completely unable to work (Homebound) 1 — for a period of ___ Calendar Day(s) — STARTING WITH Month ___ Day ___ Year 200_

c. ACTIVITY RESTRICTIONS — Example → 010 — Patient can return to work with restriction(s) as noted in Section 4 1 — for a period of ___ Calendar Day(s) — STARTING AFTER or ON WITH Month ___ Day ___ Year 200_

d. PERMANENT CONDITION — Patient has reached maximum medical improvement. Restriction(s) listed are permanent 1 — Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.) 2

## 4. Restriction(s):

Unmarked Box = No Restrictions check "Comments"

Bending, Climbing, Computer, Driving, Gripping L / R, Hand Motion L / R, Kneeling, Lifting L R, Pushing/Pulling, Sitting, Squatting, Standing, Twisting, Walking, Other — Max Lifting (lbs)

Cannot Perform

RESTRICTED: MAX Minutes Per Hour; MAX Hours Per 8 hr Shift

FOR WORKERS' COMP QUESTIONS CALL 1-866-565-0675

FOLLOW-UP PLAN:
TX Duration 4 wk(s)
Next Visit 3/21/05
Therapy ___ visits/wk ___ wk(s)

Comments (List Exercise Devices) — Released from CARE

Clinician Resource Code: CPAL: EPOS Example → J0B0E
[illegible]

Date Signed: Month 02 Day 22 Year 2005

Circle affiliated Medical Center Area

Clinician Signature [signature]


MAR-15-2005 07:11 PM

5250 2040 3081 073906542

OPTICAL SCANNING FORM

## 1. Patient Data:

DATE OF THE FORM / VISIT DISCHARGE — Month 03 Day 21 Year 2005 — Day (6 am - 5 pm) / Evn (5 pm - 12 am) / Night (12 am - 6 am)

EMPLOYEE STATES LAST DAY WORKED — Month 03 Day 21 Year 2005

EMPLOYEE STATES DATE OF INJURY / DATE ILLNESS BEGAN — Month 04 Day Year 2004 — Telephone Consultation, patient not seen

Hospital Admit / Outpatient Surgery / EDC — Month Day Year 200

CORRECTIONS: Line through error, initial, AND mark this box

Medical Record Number (If KP card is not available)

2040 3081

© copyright 1997. Kaiser Permanente

## 2. Diagnosis or Reason for Impairment:

a. Mark ONLY the DX(s) driving the Off Work/Activity Restriction(s) in Section 3.

| Diagnosis | Off Work Guideline | Diagnosis | Off Work Guideline | Diagnosis | Off Work Guideline |
|---|---|---|---|---|---|
| Adverse Effect Environment (01) | 0-7 Days | FX Humerus / Radius / Ulna / Hand / Finger(s) (02) | 3-7 Days | Sprain / Strain / Pain: Cervical / Thoracic / Neck (03) | 3-7 Days |
| Carpal Tunnel Syndrome (04) | 0 Days | Hernia (prior to surgery) (05) | 6 Days | Sprain / Strain / Pain: LE / Hip / Knee / Ankle / Foot / Toe(s) (06) | 0-7 Days |
| Contusions: excludes cerebral (07) | 0-7 Days | Internal Derangement of Knee (prior to scope) (08) | 0-2 Days | Sprain / Strain / Pain: LS / Low Back (09) | 0-7 Days |
| Eye Injury - Superficial: Corneal Abrasion / Foreign Body / Chemical Burn (10) | 0-1 Days | Lacerations / Wounds / Punctures (11) | 0-2 Days | Sprain / Strain / Pain: UE / Shoulder / Elbow / Wrist / Hand / Finger(s) (12) | 0 Days |
| FX Ankle / Foot excludes Toe(s) (13) | 0-7 Days | Radiculopathy (cervical-lumbar) / Sciatica (14) | 0-10 Days | Tendonitis / Synovitis / Bursitis / Shoulder Impingement (15) ✓ | 0-7 Days |

b. If DX bubble NOT found in 2a, print Code and Write description of the DX driving Off Work/Activity Restrictions in Section 3

DMI Code (DMI group list on fly sheet): D

OR Diagnosis Code (ICD - see ECR)

OR Procedure Code (CPT - see ECR)

AND Written description for DX code above (2b)

## 3. EMPLOYER INSTRUCTIONS

Recommended Impact on Work:

Patient may return to regular work without restrictions 1st day after total number of days in b. + c. If accommodations not available for restrictions, then patient to be considered disabled for total days in b. + c. SEE BACK OF FORM FOR MORE INFORMATION.

a. RETURN TO WORK TODAY — ✓ Patient can return to work today without restrictions

b. OFF WORK Homebound (Example → 0 2 1) — Patient completely unable to work (Homebound) for a period of Calendar Day(s) STARTING WITH Month Day Year 200

c. ACTIVITY RESTRICTION(S) (Example → 0 0 0) — Patient can return to work with restriction(s) as noted in Section 4 for a period of Calendar Day(s) STARTING AFTER 3b OR WITH Month Day Year 200

d. PERMANENT CONDITION — 1 Patient has reached maximum medical improvement. Restriction(s) listed are permanent. 2 Patient is permanently, totally disabled. (ie: anticipate he/she will never return to any work.)

## 4. Restriction(s):

Unmarked Box = No Restrictions check "Comments"

Bending, Climbing, Computer, Driving, Grasping (1 L, 2 R), Hand Motion (1 L, 2 R), Kneeling, Push/Pulling (L R), Reaching Above Shoulder (L R), Sitting, Squatting, Standing, Twisting, Walking, Lifting (L R), NO LIFTING OVER Pounds

Cannot Perform

RESTRICTED — MAX: Minutes Per Hour; MAX: Hours Per 8 hr. Shift

Example: L ® 30 5 4

FOLLOW-UP PLAN:

TX Duration P/C days

Next Visit ____

Therapy ___ visits/wk ___ wk(s)

Comments (List assistive devices)

Released from CARE.

## 5. Clinician Resource Code:

OPAS / KPOS Example → J O D O E — [handwritten code]

Date Signed: Month 03 Day 21 Year 2005

Circle affiliated Medical Center Area: BALDWIN PARK, BELLFLOWER, FONTANA, KERN COUNTY, LOS ANGELES, ORANGE COUNTY, PANORAMA CITY, RIVERSIDE, SAN DIEGO

Clinician Name (print): Wang MD

Clinician Signature: [signature]

CONFIDENTIAL MEDICAL INFORMATION: This form contains confidential medical information which must only be accessed by those with legitimate need to know. This form may not be placed or maintained in a non-medical personnel file, but must be placed in a separate confidential occupational health file.

OCCUPATIONAL MEDICINE