LAURA E. DUFFY
United States Attorney
TIMOTHY C. STUTLER
Assistant U.S. Attorney
California State Bar No. 131794
LAURA GRIMES
Assistant U.S. Attorney
Virginia State Bar No. 75998
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7665/7748
Facsimile: (619) 546-7751

Attorneys for Defendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SCOTT,<br><br>Plaintiff,<br><br>v.<br><br>JANET A. NAPOLITANO, SECRETARY, DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Civil No. 08cv0735BTM(JMA)<br><br>DEFENDANT'S TRIAL BRIEF ON VALIDITY OF MEDICAL RELEASE LANGUAGE<br><br>TRIAL DATE: July 22, 2013<br>TIME: 9:30 a.m.<br>CTRM: 15B<br><br>JUDGE: Hon. Barry T. Moskowitz |

I

INTRODUCTION

The Court has proposed a jury instruction that would give Plaintiff a right to recover for a violation of the confidentiality provision of the Americans With Disability Act ("ADA"). 42 U.S.C. § 12112(3)(B). For the reasons stated below and on the record yesterday, Defendant objects to this jury instruction.

Defendant suspended and later fired Plaintiff for failing to answer medical questions and for failing to sign release forms. On June 6, 2013, the Court issued a Joint Pretrial Order ("PTO"" agreed upon and submitted by the parties. Dckt. 113. Based on the Court's summary judgment ruling in this matter, the PTO provided that

"[t]he remaining question to be answered by the finder of fact (besides damages) is what role, if any, Plaintiff's refusals to release his medical information played in the two disciplinary decisions." Dckt. 113, 4:4-6. More specifically, the PTO provided that finder of fact's inquiry would be limited to the question of whether Defendant would have terminated and/or suspended Plaintiff of Plaintiff had answered the medical questions. Id., 6:5-13.

The parties also agreed and the PTO provided that the Supreme Court's anticipated decision in Univ. of Texas Sw. Med. Ctr. v. Nassar, No. 12-484 (U.S. argued Apr. 24, 2013), 2013 WL 1141955, would determine what language to use in describing how much of a factor those refusals must be in order for Plaintiff to prevail. Dckt. 113, 3:10-13. As previously briefed by the parties to this action, the Supreme Court adopted the "but for" test of causation. See Dckt. 122.

The proposed jury instruction at issue here Court pertains to an order issued by FPS employee Tamra Hirano in December 2006. That order required Plaintiff to sign a release authorizing the agency to send records to its contract physician, Dr. Lawrence Saladino. Those records were already in the agency's possession. Every page of the exhibit pertained to Plaintiff's medical problems in the past two years that had affected his ability to perform his duties and/or led to the revocation of his law enforcement authority. These included e-mails, medical records from Plaintiff's personal physician, leave requests for physical therapy, and Plaintiff's OWCP claim. See Plaintiff's Trial Exhibit 19.

The Court recognizes that because the release request at issue did not seek new documents or information from Plaintiff, but instead sought his permission to send the documents to Defendant's contractor physician, it could not be an "inquiry" prohibited by the ADA. See 42 U.S.C.A. § 12112(d)(4)(B). The Court reasoned that the inquiry occurred at some earlier point, when the documents came into Defendant's possession.

///

But the Court also observes that 42 U.S.C.A. § 12112(d)(4)(C) provides that information obtained through such an inquiry that regards an employee's medical condition or history is subject to the confidentiality provisions of 42 U.S.C.A. § 12112(d)(3)(B). The latter provision provides in relevant part that "information obtained regarding . . . medical condition or history . . . **is treated as a confidential medical record**." 42 U.S.C.A. § 12112(d)(3)(B) (emphasis added).

The jury instruction at issue, titled "Releases," gives Plaintiff a new avenue for recovery if Plaintiff can show:

The release(s) pertained to documents that revealed medical information and were not reasonably related to a medical determination of whether the plaintiff could perform the essential functions of his job.

Release Instruction. The proposed instruction goes on to state that "Plaintiff's refusal to release those documents was protected activity under the ADA." Id.

II

DISCUSSION

A. THE ADA DOES NOT PROHIBIT THE 2006 RELEASE

The ADA requires that information obtained pursuant to a medical examination or inquiry about an employee's medical condition or history be "treated as a confidential medical record." 42 U.S.C. § 12112(3)(B); 42 U.S.C. § 12112(4)(A), (C). Although the statute does not define what constitutes an examination or inquiry, the EEOC Enforcement Guidance "states that 'a disability-related inquiry is a question (or series of questions) that is likely to elicit information about a disability.'" Floyd v. Suntrust Banks, Inc., 878 F.Supp.2d 1316, 1323 (quoting EEOC, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans With Disabilities Act, Notice No. 915.002, http://www.eeoc.gov/policy/docs/guidance-inquiries.html (July 27, 2000)).

Assuming the documents initially came to Defendant pursuant to such an inquiry, Plaintiff has failed to demonstrate that the release requiring Plaintiff to

authorize Defendant to send Dr. Saladino of the documents already in Defendant's possession was a breach of the ADA's confidentiality provision.

The ADA does not define what "treated as a confidential medical record" entails. See 42 U.S.C. § 12112(3)(B). Plaintiff cannot establish that any the disclosure at issue would violate the Act. First, the question of whether the 2006 release was valid if informed by the EEOC Guidance on Disability-Related Inquiries and Medical Examinations ("EEOC Guidance"). Enforcement Guidance: Disability-Related Inquiries And Medical Examinations Of Employees Under the Americans With Disabilities Act, July 27, 2000, http://www.eeoc.gov/policy/docs/guidance-inquiries.html. Question 17 of the EEOC Guidance asks, "May an employer make disability-related inquiries or require a medical examination when an employee who has been on leave for a medical condition seeks to return to work?" Id. at Question 17. The Guidance allows such inquiries as long as they are "limited in scope" and "related to the specific medical condition for which the employee took leave." Id.

The Guidance further provides an example that is similar to the facts of this case. Id. at Question 17, Example B. In the example, the employee returns from leave with a personal doctor's note clearing him to work. But because the employer has a reasonable belief that his medical condition will impair his essential job functions, the employer "may ask the employee for additional documentation" regarding his injury and treatment or submit to a medical examination.

Similarly, because Defendant in this case was unsure about Plaintiff's ability to return to work following his arm/shoulder injury, Defendant could require Plaintiff to release additional documentation regarding the injury. Plaintiff's medical information in the termination release documents, if considered confidential, fall under this exception designed to allow employers to clear their employees to return to work.

///

Additionally, the DC Circuit has held that the test is whether "information disclosed pursuant to an employer's medical inquiry spreads no further than necessary to satisfy the legitimate needs of both employer and employee." Doe v. United States Postal Service, 317 F.3d 339, 344 (D.C. Cir. 2003).

In Floyd, the court was asked to determine whether the disclosure by an employer's in house counsel to outside counsel of an employee's FMLA file for the purposes of defending a suit brought by the employee violated the ADA's confidentiality provisions. The court looked to Black's law dictionary, which defined "confidential" as "'[i]ntrusted with the confidence of another or with his secret affairs or purposes.'" Floyd, 878 F.Supp2d 1323 (quoting DELUXE BLACK'S LAW DICTIONARY 297 (6th ed.1991)). A confidential medical record, then, was a "medical record kept in confidence." Id. Applying the D.C. Circuit's Doe test in light of this definition, the court found that "preserving and obtaining documents for the purpose of defending oneself in litigation is a legitimate purpose. And, that limiting the disclosure to the in-house counsel assigned to the litigation and the outside counsel defending the suit is not further than necessary." Id. at 1325.

The situation here is analogous. The doctor needed to medically clear its employee. It had no in-house doctor to make such a determination. Disclosure to Dr. Saladino, Defendant's contract Medical Review officer was "no further than necessary" to effect this legitimate business purpose. Defendant believes that Dr. Saladino was an agent of Defendant by virtue of the contractual relationship between his employer, CHS, and Defendant. Transferring the documents to him was akin to an intra-employer transfer. "[I]f any intraemployer dissemination constituted a 'new' inquiry under the statute, the dissemination guidelines of §12112(d)(3) would be superfluous." See Floyd, 878 F.Supp. at 1323.

Indeed, Defendant believes that Dr. Saladino’s status as an employee for

confidentiality purposes is not merely a creature of case law, but of statute as well.[1] Although the ADA's confidentiality provision does not address the relationship between contractors and federal agencies, other federal privacy statutes provide guidance in determining the restrictions on use and dissemination of "confidential medical records" under 42 U.S.C.A. § 12112(d)(3)(B). Under the Privacy Act of 1974, 5 U.S.C. § 552, "[w]hen an agency provides by a contract for the operation by or on behalf of Defendant of a system of records to accomplish an agency function, Defendant shall… cause the requirements of this section to be applied to such system. …[A]ny such contractor and any employee of such contractor… **shall be considered an employee of an agency**." 5 U.S.C. § 552(m)(1) (emphasis added).

Unfortunately, because the FPS was part of another agency than it is now (U.S. Customs and Border Protection), since starting this brief late yesterday, Defendant has not yet been able to obtain the contract between Defendant and Dr. Saladino's employer, CHS, which would establish Dr. Saladino's federal-employee for purposes of the confidentiality provision. But Defendant's trial counsel is informed and believes that the contract contains such a provision.

As the Privacy Act discussion above suggests, if an Agency cannot conduct Agency business through its contractors without triggering confidentiality requirements, Defendant could not get work accomplished through its contractors. Here, if Dr. Saladino, as a contractual Agent of FPS, cannot review the medical documents an employee has already released to Defendant, what possible purpose does he serve?

This leads to the conclusion that the privacy release Hirano asked Plaintiff to sign was not required under the ADA. The premise that requesting Plaintiff sign a release not required by the ADA would somehow violate the ADA cannot stand. Similarly flawed is the argument that, if the release were not required by the ADA (or

[1]Defendant is attempting to obtain the contract documents to establish this, but was unable to accomplish that in the brief time available to research and draft this brief.

other federal statute), Plaintiff's refusal to sign it could not have motivated Defendant's decision to terminate him. Despite not being required by statute, the release was required by Defendant's medical exam policy. To Arrange a FFD Examination. Plaintiff was ordered to comply with Agency policy and sign the release. He opted not to comply and was consequently terminated. The proposition that Defendant could only terminate Plaintiff for refusing to sign a privacy release required by statute, despite his flouting of a direct order and clear FPS policy, would nullify Defendant's regulations in a manner inconsistent with both logic and public policy.

IV

## CONCLUSION

As discussed above, the medical release language underlying Plaintiff's suspension and termination is valid under the ADA. Plaintiff's attempts to again challenge the validity of the release language for any other purpose in not involved in this case.

DATED: July 26, 2013

LAURA E. DUFFY
United States Attorney

/s/ Timothy C. Stutler
TIMOTHY C. STUTLER
Assistant U.S. Attorney
LAURA GRIMES
Assistant U.S. Attorney
Attorneys for Defendant